COOK, Circuit Judge.
Defendants Carl, Robert, and James Woodman appeal their convictions of crimes related to tax evasion. All three argue the evidence presented at trial was insufficient to support their convictions. Carl Woodman adds two other arguments — that he was denied due process and a downward sentencing departure. We conclude that sufficient evidence supported the convictions, that Carl Woodman was not denied due process, and that the district court did not err in refusing to depart downward.
I. Background
Thomas Warholic and Defendant Carl Woodman created WeShare, Inc., as a charity for the homeless. From 1992 through 1995, WeShare collected over $600,000 per year in donations from which Warholic and Defendants drew salaries. WeShare also funneled sums to Warholic and Appellants through other “shell corporations” (as described by witnesses at trial) they formed and used primarily for their personal benefit, rather than any business purpose.
Defendants’ jury convictions arise out of this scheme. All three were convicted of *842 conspiracy to defraud the United States. Additionally, the jury convicted Carl and James Woodman of failure to file income tax returns and Robert Woodman of filing a false income tax return.
II. Sufficiency of the Evidence
Where a defendant argues that the prosecution did not present sufficient evidence to support his conviction, this court must affirm the verdict if we conclude, after reviewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Martin, 897 F.2d 1368, 1373 (6th Cir.1990). The court may not weigh the evidence or assess the credibility of witnesses. United States v. Jackson, 55 F.3d 1219, 1225 (6th Cir.1995).
A. “Loans rather than income” defense
Defendants argue that the government presented insufficient evidence to convict them because the payments they received through their scheme were loans, not income. While the jury could have reached that conclusion, sufficient evidence supported their contrary conclusion that the payments were income, not loans. Though Thomas Warholic testified that Defendants considered their payments from WeShare to be loans, the circumstances of the payments lacked any of the usual indicia of a repayment obligation. WeShare’s bookkeeper testified that she issued checks for “consulting fees” to Robert and Carl Woodman, without characterizing these payments as loans. Warholic testified that Defendants planned for WeShare to eventually forgive the putative loans and pay the taxes on them at that time. But other testimony from Warholic casts doubt on whether the taxes would ever be paid. For example, he agreed that he “felt funny” about “avoiding taxes” through the plan. And when asked, “The plan was not ever to rip off Uncle Sam was it, just designed to delay?” he testified, “I think I knew deep down I was doing it.”
With this evidence considered in the light most favorable to the government, the jury could have concluded beyond a reasonable doubt that the payments to Defendants were not loans, but were instead a means to permanently avoid paying taxes.
B. Conspiracy to Defraud the Government
Defendants were convicted of conspiracy to defraud the government under 18 U.S.C. § 371. The elements of conspiracy are: (1) the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) the accused willfully became a member of the conspiracy; (3) one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged. United States v. Miller, 161 F.3d 977, 985 (6th Cir.1998). “A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.” United States v. Beverly, 369 F.3d 516, 532 (6th Cir.2004) (internal quotes and citations omitted).
Here, the testimony of IRS employees and related exhibits showed that Defendants avoided paying taxes through a common scheme, using shell corporations. James Woodman argues that insufficient evidence existed to support his conspiracy conviction because he did not join WeShare until after the alleged conspiracy began. But the government presented evidence that he failed to report money he *843 received from WeShare, just like the other defendants. This was sufficient to allow the jury to infer a common scheme and convict him along with the others.
C. Failure to File Under 26 U.S.C. § 7203
The testimony of IRS employees showed that Carl and James Woodman each had an obligation to file a tax return and failed to do so. The jury could have found that Carl Woodman’s failure was willful because Warholic’s testimony showed that he and the others engaged in their scheme for the purpose of avoiding taxes. The jury also could have found that James Woodman’s failure was willful because he filed a tax return in previous years, and therefore knew of his legal obligation to do so.
D. Filing a False Return Under 26 U.S.C. § 7206(1)
To prove this offense, “the government need only prove that a defendant willfully made and subscribed a return, that the return contained a written declaration that it was made under penalties of perjury, and that the defendant did not believe the return to be true and correct as to every material matter.” United States v. Tarwater; 308 F.3d 494, 504 (6th Cir.2002). An IRS witness testified that, for tax year 1995, Robert Woodman filed Form 1040, which includes a statement that the filer signs it under penalty of perjury. Another IRS witness testified that Robert Woodman listed his income on this form as $5700 when it was actually $19,200, and that Robert understated his tax liability by $2025 as a result. Because Warholic’s testimony and other evidence could allow the jury to conclude that the loans were really income, the jury could also conclude that Robert did not believe his return to be true.
III. Due Process
Carl Woodman alleges that WeShare entered into an agreement with the IRS to pay deficient payroll taxes in installments, that the IRS lost or destroyed this agreement, and that this violated his right to due process. The government violates due process if, in bad faith, it fails to preserve evidence that would have been potentially useful to a criminal defendant. Illinois v. Fisher, 540 U.S. 544, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004). Because the agreement at issue pertains to WeShare’s tax liability, not Carl Woodman’s, we doubt its potential usefulness. But regardless, Carl identifies nothing in the record that suggests that the government acted in bad faith.
IV. Downward Departure
Carl Woodman also argues that the district court should have granted him a downward departure after applying the United States Sentencing Guidelines, because of his alleged diminished capacity and “overstated” criminal history. This court cannot review a refusal to grant a downward departure unless the district court (1) improperly computed the guideline range; (2) was unaware of its discretion to depart downward; or (3) imposed the sentence in violation of law or as a result of the incorrect application of the Sentencing Guidelines. United States v. Cooper, 348 F.3d 493, 495 (6th Cir.2003). The conditions for review of the district court’s decision are not met here — the district court considered Carl Woodman’s arguments and concluded that “the case hasn’t been made for a downward departure.”
V. Conclusion
We affirm Defendants’ convictions and Carl Woodman’s sentence.