(Slip Opinion) OCTOBER TERM, 2007 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BOULWARE *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 06–1509.   Argued January 8, 2008—Decided March 3, 2008

One element of tax evasion under 26 U. S. C. §7201 is "the existence of a tax deficiency." *Sansone* v. *United States*, 380 U. S. 343, 351. Petitioner Boulware was charged with criminal tax evasion and filing a false income tax return for diverting funds from a closely held corporation, HIE, of which he was the president, founder, and controlling shareholder. To support his argument that the Government could not establish the tax deficiency required to convict him, Boulware sought to introduce evidence that HIE had no earnings and profits in the relevant taxable years, so he in effect received distributions of property that were returns of capital, up to his basis in his stock, which are not taxable, see 26 U. S. C. §§301 and 316(a). Under §301(a), unless the Internal Revenue Code requires otherwise, a "distribution of property" "made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in [§301(c)]." Section 301(c) provides that the portion of the distribution that is a "dividend," as defined by §316(a), must be included in the recipient's gross income; and the portion that is not a dividend is, depending on the shareholder's basis for his stock, either a nontaxable return of capital or a taxable capital gain. Section 316(a) defines "dividend" as a "distribution" out of "earnings and profits." The District Court granted the Government's *in limine* motion to bar evidence supporting Boulware's return-of-capital theory, relying on the Ninth Circuit's *Miller* decision that a diversion of funds in a criminal tax evasion case may be deemed a return of capital only if the taxpayer or corporation demonstrates that the distributions were intended to be such a return. The court later found Boulware's proffer of evidence insufficient under *Miller* and declined to instruct the jury on his theory. In affirming his conviction, the Ninth Circuit held that

Boulware's proffer was properly rejected under *Miller* because he of-
fered no proof that the amounts diverted were intended as a return of
capital when they were made.

*Held:* A distributee accused of criminal tax evasion may claim return-
of-capital treatment without producing evidence that, when the dis-
tribution occurred, either he or the corporation intended a return of
capital. Pp. 6–17.

(a) Tax classifications like "dividend" and "return of capital" turn
on a transaction's "objective economic realities," not "the particular
form the parties employed." *Frank Lyon Co.* v. *United States*, 435
U. S. 561, 573. In economic reality, a shareholder's informal receipt
of corporate property "may be as effective a means of distributing
profits among stockholders as the formal declaration of a dividend,"
*Palmer* v. *Commissioner*, 302 U. S. 63, 69, or as effective a means of
returning a shareholder's capital, see *ibid.* Economic substance re-
mains the touchstone for characterizing funds that a shareholder di-
verts before they can be recorded on a corporation's books. Pp. 6–8.

(b) *Miller*'s view that a return-of-capital defense requires evidence
of a corresponding contemporaneous intent sits uncomfortably not
only with the tax law's economic realism, but also with the particular
wording of §§301 and 316(a). As these sections are written, the tax
consequences of a corporation's distribution made with respect to
stock depend, not on anyone's purpose to return capital or get it back,
but on facts wholly independent of intent: whether the corporation
had earnings and profits, and the amount of the taxpayer's basis for
his stock. The *Miller* court could claim no textual hook for its con-
temporaneous intent requirement, but argued that it avoided sup-
posed anomalies. The court, however, mistakenly reasoned that ap-
plying §§301 and 316(a) in criminal cases unnecessarily emphasizes
the deficiency's amount while ignoring the willfulness of the intent to
evade taxes. Willfulness is an element of the crimes because the sub-
stantive provisions defining tax evasion and filing a false return ex-
pressly require it, see, *e.g.,* §7201. Nothing in §§301 and 316(a) re-
lieves the Government of the burden of proving willfulness or
impedes it from doing so if there is evidence of willfulness. The
*Miller* court also erred in finding it troublesome that, without a con-
temporaneous intent requirement, a shareholder distributee would
be immune from punishment if the corporation had no earnings and
profits but convicted if the corporation did have earning and profits.
An acquittal in the former instance would in fact result merely from
the Government's failure to prove an element of the crime. The fact
that a shareholder of a successful corporation may have different tax
liability from a shareholder of a corporation without earnings and
profits merely follows from the way §§301 and 316(a) are written and

from §7201's tax deficiency requirement. Even if there were compelling reasons to extend §7201 to cases in which no taxes are owed, Congress, not the Judiciary, would have to do the rewriting. Pp. 8–12.

(c) *Miller* also suffers from its own anomalies. First, §§301 and 316 are odd stalks for grafting a contemporaneous intent requirement. Correct application of their rules will often become possible only at the end of the corporation's tax year, regardless of the shareholder or corporation's understanding months earlier when a particular distribution may have been made. Moreover, §301(a), which expressly provides that distributions made with respect to stock "shall be treated in the manner provided in [§301(c)]," ostensibly provides for all variations of tax treatment of such distributions unless a separate Code provision requires otherwise. Yet *Miller* effectively converts the section into one of merely partial coverage, leaving the tax status of one class of distributions in limbo in criminal cases. Allowing §61(a) of the Code, which defines gross income, "[e]xcept as otherwise provided," as "all income from whatever source derived," to step in where §301(a) has been pushed aside would sanction yet another eccentricity: §301(a) would not cover what it says it "shall," (distributions with respect to stock for which no more specific provision is made), while §61(a) would have to apply to what by its terms it should not (a receipt of funds for which tax treatment is "otherwise provided" in §301(a)). *Miller* erred in requiring contemporaneous intent, and the Ninth Circuit's judgment here, relying on *Miller*, is likewise erroneous. Pp. 12–14.

(d) This Court declines to address the Government's argument that the judgment should be affirmed on the ground that before any distribution may be treated as a return of capital, it must first be distributed to the shareholder "with respect to . . . stock." The facts in this case have not been raked over with that condition in mind, and any canvas of evidence and Boulware's proffer should be made by a court familiar with the entire evidentiary record. Nor will the Court take up in the first instance the question whether an unlawful diversion may ever be deemed a "distribution . . . with respect to [a corporation's] stock." Pp. 14–17.

470 F. 3d 931, vacated and remanded.

SOUTER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1509

## MICHAEL H. BOULWARE, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 3, 2008]

JUSTICE SOUTER delivered the opinion of the Court.

Sections 301 and 316(a) of the Internal Revenue Code set the conditions for treating certain corporate distributions as returns of capital, nontaxable to the recipient.  26 U. S. C. §§301, 316(a) (2000 ed. and Supp. V.).  The question here is whether a distributee accused of criminal tax evasion may claim return-of-capital treatment without producing evidence that either he or the corporation intended a capital return when the distribution occurred. We hold that no such showing is required.

I

"[T]he capstone of [the] system of sanctions . . . calculated to induce . . . fulfillment of every duty under the income tax law," *Spies* v. *United States*, 317 U. S. 492, 497 (1943), is 26 U. S. C. §7201, making it a felony willfully to "attemp[t] in any manner to evade or defeat any tax imposed by" the Code.[1]  One element of tax evasion under §7201 is "the existence of a tax deficiency," *Sansone* v.

---

[1] A related provision, 26 U. S. C. §7206(1), criminalizes the willful filing of a tax return believed to be materially false.  See n. 9, *infra*.

*United States*, 380 U. S. 343, 351 (1965); see also *Lawn* v.
*United States*, 355 U. S. 339, 361 (1958),[2] which the Government must prove beyond a reasonable doubt, see *ibid.*
("[O]f course, a conviction upon a charge of attempting to
evade assessment of income taxes by the filing of a fraudulent return cannot stand in the absence of proof of a
deficiency").

Any deficiency determination in this case will turn on
§§301 and 316(a) of the Code. According to §301(a), unless
another provision of the Code requires otherwise, a "distribution of property" that is "made by a corporation to a
shareholder with respect to its stock shall be treated in
the manner provided in [§301(c)]." Under §301(c), the
portion of the distribution that is a "dividend," as defined
by §316(a), must be included in the recipient's gross income; and the portion that is not a dividend is, depending
on the shareholder's basis for his stock, either a nontaxable return of capital or a gain on the sale or exchange of
stock, ordinarily taxable to the shareholder as a capital
gain. Finally, §316(a) defines "dividend" as

> "any distribution of property made by a corporation to
> its shareholders—
>
>    "(1) out of its earnings and profits accumulated after February 28, 1913, or
>
>    "(2) out of its earnings and profits of the taxable
> year (computed as of the close of the taxable year
> without diminution by reason of any distributions
> made during the taxable year), without regard to the
> amount of the earnings and profits at the time the

_____

[2] "[T]he elements of §7201 are willfulness[,] the existence of a tax
deficiency, . . . and an affirmative act constituting an evasion or attempted evasion of the tax." *Sansone* v. *United States*, 380 U. S. 343,
351 (1965). The Courts of Appeals have divided over whether the
Government must prove the tax deficiency is "substantial," see *United
States* v. *Daniels*, 387 F. 3d 636, 640–641, and n. 2 (CA7 2004) (collecting cases); we do not address that issue here.

distribution was made."

Sections 301 and 316(a) together thus make the existence of "earnings and profits"[3] the decisive fact in determining the tax consequences of distributions from a corporation to a shareholder with respect to his stock. This requirement of "relating the tax status of corporate distributions to earnings and profits is responsive to a felt need for protecting returns of capital from tax." 4 Bittker & Lokken ¶92.1.1, p. 92–3.

## II

In this criminal tax proceeding, petitioner Michael Boulware was charged with several counts of tax evasion and filing a false income tax return, stemming from his diversion of funds from Hawaiian Isles Enterprises (HIE), a closely held corporation of which he was the president, founder, and controlling (though not sole) shareholder. At trial,[4] the United States sought to establish that Boulware had received taxable income by "systematically divert[ing] funds from HIE in order to support a lavish lifestyle." 384 F. 3d 794, 799 (CA9 2004). The Government's evidence showed that

——————

[3] Although the Code does not "comprehensively define 'earnings and profits,'" 4 B. Bittker & L. Lokken, Federal Taxation of Income, Estates and Gifts ¶92.1.3, p.92–6 (3d ed. 2003) (hereinafter Bittker & Lokken), the "[p]rovisions of the Code and regulations relating to earnings and profits ordinarily take taxable income as the point of departure," *id*., at 92–9.

[4] The trial at issue in this case was actually Boulware's second trial on §§7201 and 7206(1) charges, his convictions on those counts in an earlier trial having been vacated by the Ninth Circuit for reasons not at issue here, see 384 F. 3d 794 (2004). In that earlier trial, Boulware was also convicted of conspiracy to make false statements to a federally insured financial institution, in violation of 18 U. S. C. §371. The Ninth Circuit affirmed Boulware's conspiracy conviction that first time around, however, so the present trial did not include a conspiracy charge.

> "[Boulware] gave millions of dollars of HIE money to his girlfriend . . . and millions of dollars to his wife . . . without reporting any of this money on his personal income tax returns. . . . [H]e siphoned off this money primarily by writing checks to employees and friends and having them return the cash to him, by diverting payments by HIE customers, by submitting fraudulent invoices to HIE, and by laundering HIE money through companies in the Kingdom of Tonga and Hong Kong." *Ibid*.

In defense, Boulware sought to introduce evidence that HIE had no retained or current earnings and profits in the relevant taxable years, with the consequence (he argued) that he in effect received distributions of property that must have been returns of capital, up to his basis in his stock. See §301(c)(2). Because the return of capital was nontaxable, the argument went, the Government could not establish the tax deficiency required to convict him.

The Government moved *in limine* to bar evidence in support of Boulware's return-of-capital theory, on the grounds of "irrelevan[ce] in [this] criminal tax case," App. 20. The Government relied on the Ninth Circuit's decision in *United States* v. *Miller*, 545 F. 2d 1204 (1976), in which that court held that in a criminal tax evasion case, a diversion of funds may be deemed a return of capital only after "some demonstration on the part of the taxpayer and/or the corporation that such [a distribution was] intended to be such a return," *id.*, at 1215. Boulware, the Government argued, had offered to make no such demonstration. App. 21.

The District Court granted the Government's motion, and when Boulware sought "to present evidence of [HIE's] alleged over-reporting of income, and an offer of proof relating to the issue of . . . dividends," *id.*, at 135, the District Court denied his request. The court said that

"[n]ot only would much of [his proffered] evidence be ex-cludable as expert legal opinion, it is plainly insufficient under the Miller case," *id.*, at 138, and accordingly de-clined to instruct the jury on Boulware's return-of-capital theory. The jury rejected his alternative defenses (that the diverted funds were nontaxable corporate advances or loans, or that he used the moneys for corporate purposes), and found him guilty on nine counts, four of tax evasion and five of filing a false return.

The Ninth Circuit affirmed. 470 F. 3d 931 (2006). It acknowledged that "imposing an intent requirement cre-ates a disconnect between civil and criminal liability," but thought that under *Miller*, "the characterization of di-verted corporate funds for civil tax purposes does not dictate their characterization for purposes of a criminal tax evasion charge." 470 F. 3d, at 934. The court held the test in a criminal case to be "whether the defendant has willfully attempted to evade the payment or assessment of a tax." *Ibid.* Because Boulware "'presented no concrete proof that the amounts were considered, intended, or recorded on the corporate records as a return of capital at the time they were made,'" *id.*, at 935 (quoting *Miller*, *supra*, at 1215), the Ninth Circuit held that Boulware's proffer was "properly rejected . . . as inadequate," 470 F. 3d, at 935.

Judge Thomas concurred because the panel was bound by *Miller*, but noted that "*Miller*—and now the majority opinion—hold that a defendant may be criminally sanc-tioned for tax evasion without owing a penny in taxes to the government." 470 F. 3d, at 938. That, he said, not only "indicate[s] a logical fallacy, but is in flat contradic-tion with the tax evasion statute's requirement . . . of a tax deficiency." *Ibid.* (internal quotation marks omitted).[5]

---

[5] Judge Thomas went on to say that the Government would prevail even without *Miller*'s rule because, in his view, Boulware's diversions

We granted certiorari, 551 U. S. ___ (2007), to resolve a split among the Courts of Appeals over the application of §§301 and 316(a) to informally transferred or diverted corporate funds in criminal tax proceedings.[6] We now vacate and remand.

### III
### A

The colorful behavior described in the allegations requires a reminder that tax classifications like "dividend" and "return of capital" turn on "the objective economic realities of a transaction rather than . . . the particular form the parties employed," *Frank Lyon Co.* v. *United States*, 435 U. S. 561, 573 (1978); a "given result at the end of a straight path is not made a different result . . . by following a devious path," *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609, 613 (1938).[7] As for distributions with re-

––––––––––

were "unlawful," and the return-of-capital rules would not apply to diversions made for unlawful purposes. See 470 F. 3d, at 938–939.

[6]As noted, the Ninth Circuit holds that §§301 and 316(a) are not to be consulted in a criminal tax evasion case until the defendant produces evidence of an intent to treat diverted funds as a return of capital at the time it was made. See 470 F. 3d 931 (2006) (case below). By contrast, the Second Circuit allows a criminal defendant to invoke §§301 and 316(a) without evidence of a contemporaneous intent to treat such moneys as returns of capital. See *United States* v. *Bok*, 156 F. 3d 157, 162 (1998) ("[I]n return of capital cases, a taxpayer's intent is not determinative in defining the taxpayer's conduct"). Meanwhile, the Third, Sixth, and Eleventh Circuits arguably have taken the position that §§301 and 316(a) are altogether inapplicable in criminal tax cases involving informal distributions. See *United States* v. *Williams*, 875 F. 2d 846, 850–852 (CA11 1989); *United States* v. *Goldberg*, 330 F. 2d 30, 38 (CA3 1964); *Davis* v. *United States*, 226 F. 2d 331, 334–335 (CA6 1955); but see Brief for Petitioner 16 ("[T]hese cases can be read to address the allocation of the burden of proof on the return of capital issue, rather than the applicable substantive principles").

[7]We have also recognized that "[t]he legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."

spect to stock, in economic reality a shareholder's informal receipt of corporate property "may be as effective a means of distributing profits among stockholders as the formal declaration of a dividend," *Palmer* v. *Commissioner*, 302 U. S. 63, 69 (1937), or as effective a means of returning a shareholder's capital, see *ibid.* Accordingly, "[a] distribution to a shareholder in his capacity as such . . . is subject to §301 even though it is not declared in formal fashion." B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders ¶8.05[1], pp. 8–36 to 8–37 (6th ed. 1999) (hereinafter Bittker & Eustice); see also Gardner, The Tax Consequences of Shareholder Diversions in Close Corporations, 21 Tax L. Rev. 223, 239 (1966) (hereinafter Gardner) ("Sections 316 and 301 do not require any formal path to be taken by a corporation in order for those provisions to apply").

There is no reason to doubt that economic substance remains the right touchstone for characterizing funds received when a shareholder diverts them before they can be recorded on the corporation's books. While they "never

———————

*Gregory* v. *Helvering*, 293 U. S. 465, 469 (1935). The rule is a two-way street: "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not," *Commissioner* v. *National Alfalfa Dehydrating & Milling Co.*, 417 U. S. 134, 149 (1974); see also *id.*, at 148 (referring to "the established tax principle that a transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred"); *Founders Gen. Corp.* v. *Hoey*, 300 U. S. 268, 275 (1937) ("To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty"). The question here, of course, is not whether alternative routes may have offered better or worse tax consequences, see generally Isenbergh, Review: Musings on Form and Substance in Taxation, 49 U. Chi. L. Rev. 859 (1982); rather, it is "whether what was done . . . was the thing which the statute[, here §§301 and 316(a),] intended," *Gregory*, *supra*, at 469.

even pass through the corporation's hands," Bittker & Eustice ¶8.05[9], p. 8–51, even diverted funds may be seen as dividends or capital distributions for purposes of §§301 and 316(a), see *Truesdell* v. *Commissioner*, 89 T. C. 1280 (1987) (treating diverted funds as "constructive" distributions in civil tax proceedings). The point, again, is that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss* v. *Bowers*, 281 U. S. 376, 378 (1930); see also *Griffiths* v. *Commissioner*, 308 U. S. 355, 358 (1939).[8]

### B

*Miller*'s view that a criminal defendant may not treat a distribution as a return of capital without evidence of a corresponding contemporaneous intent sits uncomfortably not only with the tax law's economic realism, but with the particular wording of §§301 and 316(a), as well. As those sections are written, the tax consequences of a "distribution by a corporation with respect to its stock" depend, not on anyone's purpose to return capital or to get it back, but on facts wholly independent of intent: whether the corporation had earnings and profits, and the amount of the taxpayer's basis for his stock. Cf. *Truesdell* v. *Commissioner*, Internal Revenue Service (IRS) Action on Decision 1988–25, 1988 WL 570761 (Sept. 12, 1988) (recommendation regarding acquiescence); IRS Non Docketed Service

---

[8] Thus in the period between this Court's decisions in *Commissioner* v. *Wilcox*, 327 U. S. 404 (1946) (holding embezzled funds to be nontaxable to the embezzler) and *James* v. *United States*, 366 U. S. 213 (1961) (overruling *Wilcox*, holding embezzled funds to be taxable income), the Government routinely argued that diverted funds were "constructive distributions," taxable to the recipient as dividends. See generally Gardner 237 ("While *Wilcox* was good law, the safest way to insure that both the corporation and the shareholder would be taxed on their respective gain from the diverted funds was to label them dividends"); 4 Bittker & Lokken ¶92.2(7), p. 92–23, n. 37.

Advice Review, 1989 WL 1172952 (Mar. 15, 1989) (reply to request for reconsideration) ("[I]ntent is irrelevant. . . . [E]very distribution made with respect to a shareholder's stock is taxable as ordinary income, capital gain, or not at all pursuant to section 301(c) dependent upon the corporation's earnings and profits and the shareholder's stock basis. The determination is computational and not dependent upon intent").

When the *Miller* court went the other way, needless to say, it could claim no textual hook for the contemporaneous intent requirement, but argued for it as the way to avoid two supposed anomalies. First, the court thought that applying §§301 and 316(a) in criminal cases unnecessarily emphasizes the exact amount of deficiency while "completely ignor[ing] one essential element of the crime charged: the willful intent to evade taxes . . . ." 545 F. 2d, at 1214. But there is an analytical mistake here. Willfulness is an element of the crimes charged because the substantive provisions defining tax evasion and filing a false return expressly require it, see §7201 ("Any person who willfully attempts . . . "); §7206(1) ("Willfully makes and subscribes . . . "). The element of willfulness is addressed at trial by requiring the Government to prove it. Nothing in §§301 and 316(a) as written (that is, without an intent requirement) relieves the Government of this burden of proving willfulness or impedes it from doing so if evidence of willfulness is there. Those two sections as written simply address a different element of criminal evasion, the existence of a tax deficiency, and both deficiency and willfulness can be addressed straightforwardly (in jury instructions or bench findings) without tacking an intent requirement onto the rule distinguishing dividends from capital returns.

Second, the *Miller* court worried that if a defendant could claim capital treatment without showing a corresponding and contemporaneous intent,

"[a] taxpayer who diverted funds from his close corpo-
ration when it was in the midst of a financial diffi-
culty and had no earnings and profits would be im-
mune from punishment (to the extent of his basis in
the stock) for failure to report such sums as income;
while that very same taxpayer would be convicted if
the corporation had experienced a successful year and
had earnings and profits."  545 F. 2d, at 1214.

"Such a result," said the court, "would constitute an ex-
treme example of form over substance." *Ibid.* The Circuit
thus assumed that a taxpayer like Boulware could be
convicted of evasion with no showing of deficiency from an
unreported dividend or capital gain.

But the acquittal that the author of *Miller* called form
trumping substance would in fact result from the Gov-
ernment's failure to prove an element of the crime. There
is no criminal tax evasion without a tax deficiency, see
*supra*, at 1–2,[9] and there is no deficiency owing to a distri-

_____

[9] Boulware was also convicted of violating §7206(1), which makes it a
felony "[w]illfully [to] mak[e] and subscrib[e] any return, statement, or
other document, which contains or is verified by a written declaration
that it is made under the penalties of perjury, and which [the taxpayer]
does not believe to be true and correct as to every material matter."  He
argues that if the Ninth Circuit erred, its error calls into question not
only his §7201 conviction, but his §7206(1) conviction as well.  Brief for
Petitioner 15–16.  Although the Courts of Appeals are unanimous in
holding that §7206(1) "does not require the prosecution to prove the
existence of a tax deficiency," *United States* v. *Tarwater*, 308 F. 3d 494,
504 (CA6 2002); see also *United States* v. *Peters*, 153 F. 3d 445, 461
(CA7 1998) (collecting cases), it is arguable that "the nature and char-
acter of the funds received can be critical in determining whether . . .
§7206(1) has been violated, [even if] proof of a tax deficiency is unnec-
essary," 1 I. Comisky, L. Feld, & S. Harris, Tax Fraud & Evasion
¶2.03[5], p. 21 (2007); see also Brief for Petitioner 15–16.  The Govern-
ment does not argue that Boulware's §§7201 and 7206(1) convictions
should be treated differently at this stage of the proceedings, however,
and we will accede to the Government's working assumption here that
the §§7201 and 7206(1) convictions stand or fall together.

bution (received with respect to a corporation's stock) if a corporation has no earnings and profits and the value distributed does not exceed the taxpayer-shareholder's basis for his stock. Thus the fact that a shareholder distributee of a successful corporation may have different tax liability from a shareholder of a corporation without earnings and profits merely follows from the way §§301 and 316(a) are written (to distinguish dividend from capital return), and from the requirement of tax deficiency for a §7201 crime. Without the deficiency there is nothing but some act expressing the will to evade, and, under §7201, acting on "bad intentions, alone, [is] not punishable," *United States* v. *D'Agostino*, 145 F. 3d 69, 73 (CA2 1998).

It is neither here nor there whether the *Miller* court was justified in thinking it would improve things to convict more of the evasively inclined by dropping the deficiency requirement and finding some other device to exempt returns of capital.[10] Even if there were compelling reasons to extend §7201 to cases in which no taxes are owed, it bears repeating that "[t]he spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute," *Morissette* v.

---

[10] "A better [method of exempting returns of capital from taxation] could no doubt be devised." 4 Bittker & Lokken ¶92.1.1, p. 92–3; see *ibid.* (suggesting, for example, that "all receipts from a corporation could be treated as taxable income, and a correction for any resulting overtaxation could be made in computing gain or loss when stock is sold, exchanged, or becomes worthless"); see also Andrews, "Out of its Earnings and Profits": Some Reflections on the Taxation of Dividends, 69 Harv. L. Rev. 1403, 1439 (1956) (criticizing the earnings and profits concept "[a]s a device for separating income from return of capital," and suggesting that "[d]istributions which ought to be treated as return of capital [could] be brought within the concept of a partial liquidation by special provision").

*United States*, 342 U. S. 246, 263 (1952) (opinion for the Court by Jackson, J.). If §301, §316(a), or §7201 could stand amending, Congress will have to do the rewriting.

C

Not only is *Miller* devoid of the support claimed for it, but it suffers the demerit of some anomalies of its own. First and most obviously, §§301 and 316 are odd stalks for grafting a contemporaneous intent requirement, given the fact that the correct application of their rules will often become known only at the end of the corporation's tax year, regardless of the shareholder's or corporation's understanding months earlier when a particular distribution may have been made. Section 316(a)(2) conditions treating a distribution as a constructive dividend by reference to earnings and profits, and earnings and profits are to be "computed as of the close of the taxable year . . . without regard to the amount of the earnings and profits at the time the distribution was made." A corporation may make a deliberate distribution to a shareholder, with everyone expecting a profitable year and considering the distribution to be a dividend, only to have the shareholder end up liable for no tax if the company closes out its tax year in the red (so long as the shareholder's basis covers the distribution); when such facts are clear at the time the reporting forms and returns are filed,[11] the shareholder does not violate §7201 by paying no tax on the moneys received, intent being beside the point. And since intent to make a distribution a taxable one cannot control, it would

_____

[11] Sometimes these facts are not clear, and in certain circumstances a corporation may be required to assume it is profitable. For example, the instructions to IRS Form 1099–DIV provide that when a corporation is unsure whether it has sufficient earnings and profits at the end of the taxable year to cover a distribution to shareholders, "the entire payment must be reported as a dividend." See http://www.irs.gov/pub/irs-pdf/i1099div.pdf (as visited Feb. 15, 2008, and available in Clerk of Court's case file).

be odd to condition nontaxable return-of-capital treatment on contemporaneous intent, when the statute says nothing about intent at all.

The intent interpretation is strange for another reason, too (a reason in some tension with the Ninth Circuit's assumption that an unreported distribution without contemporaneous intent to return capital will support a conviction for evasion). The text of §301(a) ostensibly provides for all variations of tax treatment of distributions received with respect to a corporation's stock unless a separate provision of the Code requires otherwise. Yet *Miller* effectively converts the section into one of merely partial coverage, with the result of leaving one class of distributions in a tax status limbo in criminal cases. That is, while §301(a) expressly provides that distributions made by a corporation to a shareholder with respect to its stock "shall be treated in the manner provided in [§301(c)]," under *Miller*, a distribution from a corporation without earnings and profits would fail to be a return of capital for lack of contemporaneous intent to treat it that way; but to the extent that distribution did not exceed the taxpayer's basis for the stock (and thus become a capital gain), §301(a) would leave the distribution unaccounted for.

It is no answer to say that §61(a) of the Code would step in where §301(a) has been pushed out. Although §61(a) defines gross income, "[e]xcept as otherwise provided," as "all income from whatever source derived," the plain text of §301(a) does provide otherwise for distributions made with respect to stock. So using §61(a) as a stopgap would only sanction yet another eccentricity: §301(a) would be held not to cover what its text says it "shall" (the class of distributions made with respect to stock for which no other more specific provision is made), while §61(a) would need to be applied to what by its terms it should not be (a receipt of funds for which tax treatment is "otherwise

provided" in §301(a)).

The implausibility of a statutory reading that either creates a tax limbo or forces resort to an atextual stopgap is all the clearer from the Ninth Circuit's discussion in this case of its own understanding of the consequences of *Miller*'s rule: the court openly acknowledged that "imposing an intent requirement creates a disconnect between civil and criminal liability," 470 F. 3d, at 934. In construing distribution rules that draw no distinction in terms of criminal or civil consequences, the disparity of treatment assumed by the Court of Appeals counts heavily against its contemporaneous intent construction (quite apart from the Circuit's understanding that its interpretation entails criminal liability for evasion without any showing of a tax deficiency).

*Miller* erred in requiring a contemporaneous intent to treat the receipt of corporate funds as a return of capital, and the judgment of the Court of Appeals here, relying on *Miller*, is likewise erroneous.

## IV

The Government has raised nothing that calls for affirmance in the face of the Court of Appeals's reliance on *Miller*. The United States does not defend differential treatment of criminal and civil cases, see Brief for United States 24, and it thus stops short of fully defending the Ninth Circuit's treatment. The Government's argument, instead, is that we should affirm under the rule that before any distribution may be treated as a return of capital (or, by a parity of reasoning, a dividend), it must first be distributed to the shareholder "with respect to . . . stock." *Id.*, at 19 (internal quotations omitted). The taxpayer's intent, the Government says, may be relevant to this limiting condition, and Boulware never expressly claimed any such intent. See *ibid.* ("[I]ntent is . . . relevant to whether a payment is a 'distribution . . . with respect to [a

corporation's] stock'"); but see Tr. of Oral Arg. 44 ("[J]ust to be clear, the Government is arguing for an objective test here").

The Government is of course correct that "with respect to . . . stock" is a limiting condition in §301(a). See *supra*, at 2–3.[12] As the Government variously says, it requires that "the distribution of property by the corporation be made to a shareholder because of his ownership of its stock," Brief for United States 16; and that "'an amount paid by a corporation to a shareholder [be] paid to the shareholder in his capacity as such,'" *ibid.* (quoting 26 CFR §1.301–1(c) (2007) (emphasis deleted)).

This, however, is not the time or place to home in on the "with respect to . . . stock" condition. Facts with a bearing on it may range from the distribution of stock ownership[13]

––––––––––

[12] Another limiting condition is that the diversion of funds must be a "distribution" in the first place (regardless of the "with respect to stock" limitation), see *supra*, at 6–8, though the Government is content to assume that §301(a)'s "distribution" language is capacious enough to cover the diversions involved here, and that if Boulware bears the burden of production in going forward with the defense that the funds he received constituted a "distribution" within the meaning of §301(a), see n. 14, *infra*, that burden has been met. Nor does the Government dispute that Boulware offered sufficient evidence of his basis and HIE's lack of earnings and profits. See Brief for United States 34, n. 11.

[13] See, *e.g., Truesdell* v. *Commissioner*, IRS Non Docketed Service Advice Review, 1989 WL 1172952 (Mar. 15, 1989) ("We believe a corporation and its shareholders have a common objective—to earn a profit for the corporation to pass onto its shareholders. Especially where the corporation is wholly owned by one shareholder, the corporation becomes the alter ego of the shareholder in his profit making capacity. . . . [B]y passing corporate funds to himself as shareholder, a sole shareholder is acting in pursuit of these common objectives"). We note, however, that although Boulware was not a sole shareholder, the Tax Court has taken it as "well settled that a distribution of corporate earnings to shareholders may constitute a dividend," and so a return of capital as well, "notwithstanding that it is not in proportion to stock-holdings." *Dellinger* v. *Commissioner*, 32 T. C. 1178, 1183 (1959); see *ibid.* (noting that because other stockholders did not complain when a

to conditions of corporate employment (whether, for example, a shareholder's efforts on behalf of a corporation amount to a good reason to treat a payment of property as salary). The facts in this case have yet to be raked over with the stock ownership condition in mind, since *Miller* seems to have pretermitted a full consideration of the defensive proffer, and if consideration is to be given to that condition now, the canvas of evidence and Boulware's proffer should be made by a court familiar with the whole evidentiary record.[14]

As a more specific version of its "with respect to . . . stock" position, the Government says that the diversions of corporate funds to Boulware were in fact unlawful, see Brief for United States 34–37; see also n. 5, *supra*, and it argues that §§301 and 316(a) are inapplicable to illegal transfers, see Brief for United States 34–37; see also *D'Agostino*, 145 F. 3d, at 73 ("[T]he 'no earnings and profits, no income' rule would not necessarily apply in a case of

_____

taxpayer received unequal property, "under the circumstances they must be deemed to have ratified the distribution"); see also *Crowley* v. *Comissioner*, 962 F. 2d 1077 (CA1 1992); *Lengsfield* v. *Commissioner*, 241 F. 2d 508 (CA5 1957); *Baird* v. *Commissioner*, 25 T. C. 387 (1955); *Thielking* v. *Commissioner*, 53 TCM 746 (1987), ¶87, 227, P–H Memo TC.

[14] Boulware does not dispute that he bears the burden of producing some evidence to support his return-of-capital theory, including evidence that the corporation lacked earnings and profits and that he had sufficient basis in his stock to cover the distribution. See Tr. of Oral Arg. 53. He instead argues that, as to the "with respect to . . . stock" requirement, it suffices to show "[t]hat he is a stockholder, and that he did not receive this money in any nonstockholder capacity." *Id.*, at 57. The Government, for its part, on the authority of *Holland* v. *United States*, 348 U. S. 121 (1954) and *Bok*, 156 F. 3d, at 163–164, argues that Boulware must offer more evidence than that. We express no view on that issue here, just as we decline to consider the more general question whether the Second Circuit's rule in *Bok*, which places on the criminal defendant the burden to produce evidence in support of a return-of-capital theory, is authorized by *Holland* and consistent with *Sandstrom* v. *Montana*, 442 U. S. 510 (1979), and related cases.

*unlawful* diversion, such as embezzlement, theft, a violation of corporate law, or an attempt to defraud third party creditors" (emphasis in original)); see also n. 8, *supra.* The Government goes so far as to claim that "[t]he only rational basis for the jury's judgment was a conclusion that [Boulware] unlawfully diverted the funds."  Brief for United States 37.

But we decline to take up the question whether an unlawful diversion may ever be deemed a "distribution . . . with respect to [a corporation's] stock," a question which was not considered by the Ninth Circuit.  We do, however, reject the Government's current characterization of the jury verdict in Boulware's case.  True, the jurors were not moved by Boulware's suggestion that the diversions were corporate advances or loans, or that he was using the funds for corporate purposes.  But the jury was not asked, and cannot be said to have answered, whether Boulware breached any fiduciary duty as a controlling shareholder, unlawfully diverted corporate funds to defraud his wife, or embezzled HIE's funds outright.

V

Sections §§301 and 316(a) govern the tax consequences of constructive distributions made by a corporation to a shareholder with respect to its stock.  A defendant in a criminal tax case does not need to show a contemporaneous intent to treat diversions as returns of capital before relying on those sections to demonstrate no taxes are owed.  The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*