**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0372n.06

**Case No. 16-6331**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Jun 27, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JOHN DANIELS, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:     COLE, Chief Judge; STRANCH and DONALD, Circuit Judges.

COLE, Chief Judge.  John Daniels appeals his conviction and sentence for tax evasion in violation of 26 U.S.C. § 7201.  We hold that there was sufficient evidence to convict Daniels, that any district court errors—taken cumulatively—did not result in a fundamentally unfair process, and that the district court reasonably concluded that Daniels's failure to file was relevant conduct for determining the amount of loss.  We therefore affirm Daniels's conviction and sentence.

**I.  BACKGROUND**

Daniels owned and operated the Central Kentucky Wellness Center ("the Center"), a pain clinic in Lexington.  The Center operated predominantly on a cash basis.  Payments went through Terika Witten, the Center's office manager and Daniels's mistress.  Patients paid

between $200 and $300 to visit the clinic. At the end of each day, Witten reconciled the cash and deposited it into Daniels's business account. Daniels used a program known as QuickBooks to handle the bookkeeping for the Center.

In May 2011, Witten began withholding some patient payments and storing the withheld cash in a separate cabinet. Witten would direct this cash to Daniels at his instructions. She did not know how it was to be used. Witten kept track of the money she withheld in a notebook. According to her records, Witten gave Daniels $17,200 in cash between May 2 and December 15, 2011. Witten gave Daniels $29,950 in cash between January 3 and August 10, 2012. Finally, Witten gave Daniels $69,500 in cash between January 3 and December 12, 2013. In total, Witten gave Daniels $116,650 in cash, none of which was deposited in the business account or recorded in QuickBooks.

In 2011, Daniels hired Jim Bryant, a certified public accountant who was the managing partner of Wells & Company, to assist Daniels with his personal and corporate tax returns. Daniels and Bryant were familiar with one another from 2004 when Daniels worked as a seasonal employee at Wells & Company. Bryant completed Daniels's tax returns for tax years 2010, 2011, and 2012 based on the data in QuickBooks. Bryant filed for an extension to file Daniels's 2011 and 2012 returns. The 2010 return was completed on time and Bryant filed it on Daniels's behalf. Daniels did not provide Bryant with prompt information for his 2011 and 2012 returns. Bryant sent Daniels his completed 2011 returns in August 2013 and his completed 2012 returns in November 2013. In each case, Bryant sent Daniels tax returns with instructions on filing and an envelope for submission to the Internal Revenue Service. Daniels never submitted these returns and never paid his tax liability for these years.

On October 8, 2015, Daniels was charged in a four-count indictment with two counts of willfully failing to file income tax returns, in violation of 26 U.S.C. § 7203, and two counts of attempting to defeat or evade payment of a tax, in violation of 26 U.S.C. § 7201. A superseding indictment was filed on December 10, 2015.

Witten testified before the grand jury about the money that she took from the cash box. At that time, Witten testified that Daniels had told her to give him "pocket money from money that was collected at the clinic." (Trial Tr., R. 56, PageID 566.)

At trial, Witten testified differently, stating that she decided on her own to hold back patient payments. She also testified that she was telling the truth at trial, that she had found some grand jury questions confusing, and that she did not believe that her trial testimony was inconsistent with her grand jury testimony.

Special Agent Jared Volk, an agent with the IRS's criminal investigation division, also testified at trial. Over Daniels's objection to relevancy, Volk testified about the internal approval process required for determining if prosecution is warranted. In the process of investigating Daniels, Volk interviewed Bryant, Witten, and a number of other employees of the Center. Volk learned in his interview with Witten that she gave Daniels "pocket money." (Trial Tr., R. 57, PageID 685.) To determine the total tax liability that Daniels owed, Volk added the cash payments Witten recorded in her notebook to the tax liability reported on the unfiled tax returns. Based on Volk's calculations, Daniels's total liability for tax years 2011 and 2012 was $47,684.

During the trial, the government noticed that it had charged the wrong dates on the two counts of failure to file. The failure to file counts charged Daniels with failing to file his tax returns by April 16, 2012, and April 15, 2013, respectively. However, Daniels had received an

- 3 -

extension of the filing date in each of those years. The government therefore moved to dismiss those two counts during the trial.

The jury found Daniels guilty on both counts of tax evasion. Daniels moved for a judgment of acquittal, or, alternatively, a new trial. Daniels argued that there was insufficient evidence to convict him. He moved for a new trial based on the manifest weight of the evidence and cumulative errors by the district court. The district court denied Daniels's motion, finding that there was sufficient evidence, that the manifest weight of the evidence did not necessitate a new trial, and that any errors at trial were harmless.

The district court sentenced Daniels to fifteen months' imprisonment. The district court noted that under both the Sentencing Guidelines § 2T1.1(c)(1) (tax evasion) and § 2T1.1(c)(2) (failure to file), the base offense level is based on the amount of loss. The district court used § 2T1.1(c)(2) because Daniels never filed his 2011 and 2012 tax returns. The court, using Volk's calculations, determined that the tax loss was $47,684. Daniels timely appealed his conviction and sentence.

## II. ANALYSIS

### A. Sufficiency of the Evidence

We view the evidence in the light most favorable to the prosecution to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We do not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 588–89 (6th Cir. 1999). All conflicts of

testimony are resolved in favor of the government, and every reasonable inference is drawn in the government's favor. *United States v. Siemaszko*, 612 F.3d 450, 462 (6th Cir. 2010).

The statute under which Daniels was prosecuted provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by [the Internal Revenue Code] or the payment thereof shall . . . be guilty of a felony." 26 U.S.C. § 7201. The government must prove three elements to support a conviction for tax evasion: (1) the existence of a tax deficiency, (2) willfulness, and (3) an affirmative act constituting an evasion or attempted evasion. *United States v. Gross*, 626 F.3d 289, 293 (6th Cir. 2010) (citing *Boulware v. United States*, 552 U.S. 421, 424 n.2 (2008)). Daniels did not contest the existence of a tax deficiency; it is undisputed that Daniels failed to pay his taxes in 2011 or 2012. Accordingly, we need only address whether the government proved willfulness and an affirmative act.

### 1. *Affirmative Act*

In § 7201, Congress proscribed attempts to evade taxes "in any manner." Recognizing this, the Supreme Court has held that the type of affirmative act that may constitute evasion is broad and has declined to define or limit it. *See Spies v. United States*, 317 U.S. 492, 499 (1943). In *Spies*, the Court provided a non-exhaustive list of qualifying affirmative acts, such as keeping a double set of books, creating false documents, destroying books or other records, concealing assets, covering up sources of income, conducting business in a manner that avoids typical recordkeeping, and other conduct that is likely to mislead or conceal. *Id.* In addition, tax evasion need not be the sole motive for the conduct; it can still count as an affirmative act even if the conduct also serves other purposes. *Id.*

Daniels argues that Witten acted alone in keeping a double set of books and concealing the money she gave to him. On this point, Witten's grand jury and trial testimony conflict.

Before the grand jury, Witten was asked whether Daniels requested that she give him "pocket money from money that was collected at the clinic." (Trial Tr., R. 56, PageID 566.) Witten answered in the affirmative. However, at trial, Witten testified that she decided on her own to withhold patient payments. The government then impeached Witten with her contradictory grand jury testimony at trial. On cross-examination, Witten said that she was telling the truth at trial, that she found some grand jury questions confusing, and that she did not believe that her trial testimony was different from her grand jury testimony.

Viewed in the light most favorable to the government, the evidence is sufficient to support Daniels's conviction. Keeping a double set of books is a common affirmative act that supports a conviction for tax evasion. *See Spies*, 317 U.S. at 499; *United States v. Madison*, 226 F. App'x 535, 544 (6th Cir. 2007). A rational juror could infer from Witten's grand jury testimony that she was acting under Daniels's direction in keeping a double set of books. The government provided evidence that Witten withheld patient payments, recorded them on a separate set of books, gave Daniels the withheld money, and that Daniels had requested this money. Although Witten's grand jury and trial testimony conflict, it is not within our province to re-weigh the evidence or make decisions on the credibility of witnesses, and all conflicts of testimony are resolved in favor of the government. *Siemaszko*, 612 F.3d at 462. Accordingly, a rational juror could conclude that Daniels committed an affirmative act constituting tax evasion.

### 2. *Willfulness*

Daniels argues that the Supreme Court in *Spies* defined willfulness as "an act done with evil motive, bad purpose, or corrupt design." (Appellant Br. 29.) However, the definition of willfulness has evolved since *Spies*. In *United States v. Pomponio*, the Supreme Court examined different articulations of willfulness—including the one in *Spies*—and held that willfulness

"simply means a voluntary, intentional violation of a known legal duty." 429 U.S. 10, 12 (1976); *see also Cheek v. United States*, 498 U.S. 192, 201 (1991). This standard "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* at 201.

The evidence used to establish willfulness may be circumstantial. *United States v. Grumka*, 728 F.2d 794, 797 (6th Cir. 1984) (per curiam). In addition, evidence of affirmative acts may be used to show willfulness. *United States v. Christians*, 105 F. App'x 748, 751 (6th Cir. 2004); *see also United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992). Evidence that a defendant filed taxes in previous years can establish knowledge of the legal obligation. *See United States v. Woodman*, 115 F. App'x 840, 843 (6th Cir. 2004); *Daniel*, 956 F.2d at 543.

A rational juror could determine that the government proved willfulness beyond a reasonable doubt. The government proved that Daniels was aware of his legal duty to pay taxes by introducing evidence that Daniels had previously filed taxes. There is also no question that Daniels had substantial tax liabilities. The only question is whether Daniels voluntarily and intentionally violated his duty to pay taxes. The government introduced evidence that (1) Daniels conducted his business mostly through cash, (2) Witten—on his instructions—withheld cash from the business and provided Daniels with that cash frequently, and (3) Daniels's unfiled tax returns did not report this information. A rational juror could conclude from this evidence that Daniels voluntarily and intentionally violated his known legal duty to pay taxes.

We have considered Daniels's argument that he failed to file his tax return because he did not have the money—not to evade tax liability. However, we find this argument to be without

merit. The Supreme Court held in *Sansone v. United States* that intending to pay tax liability in the future does not vitiate willfulness under § 7201. 380 U.S. 343, 354 (1965).

Because a rational juror could conclude that the government proved all of the elements of tax evasion under § 7201 beyond a reasonable doubt, we hold that the evidence was sufficient to support Daniels's conviction.

## B. Motion for a New Trial

We review a denial of a motion for a new trial for abuse of discretion. *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). Daniels argues that the district court should have granted his motion for a new trial because the verdict is against the manifest weight of the evidence and because the district court's cumulative errors rendered Daniels's trial fundamentally unfair. We disagree.

### 1. *Manifest Weight of the Evidence*

A district court reviewing a motion for a new trial acts in the role of a thirteenth juror and considers the credibility of the witnesses and the weight of the evidence. *Id.* at 616–17. The court must grant a new trial if the verdict is against the manifest weight of the evidence. *Id.* at 616. We "simply review the evidence and the district court's ruling," reversing only based on "a definite and firm conviction that the district court committed a clear error of judgment." *Id.* at 617 (internal quotation marks omitted).

The district court determined that a jury could reasonably find that Witten lacked credibility because of her contradictory testimony and her intimate relationship with Daniels. The district court also determined that between the testimony of Witten and Volk, a jury could reasonably determine that Daniels intended to evade his tax liabilities.

Daniels has pointed to no specific problems so egregious as to warrant a finding that the district court committed a "clear error of judgment." *Id.* Daniels primarily argues that Witten's trial testimony is more credible than her grand jury testimony. However, it is the role of the district court to assess the witnesses' credibility. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). We simply review the district court's ruling for abuse of discretion and have found none.

### 2. Cumulative Errors

A defendant seeking a new trial based on cumulative error "must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). Even "errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone . . . may cumulatively produce a trial setting that is fundamentally unfair." *Id.* (quoting *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000)).

### a. Exclusion of Witten's Testimony

On cross-examination, Witten was asked four questions about whether Daniels told her to keep track of cash she removed from the box. The government objected on hearsay grounds to these questions, and the objections were sustained. The government admits that the district court erred in sustaining these objections. However, the prejudicial impact of this error was low. Witten had already testified on direct examination that Daniels had told his employees to keep track of money they took out of the cash box.

### b. Use of Witten's Grand Jury Testimony in Closing

Daniels argues that the district court erred by allowing the government to use Witten's grand jury testimony as a demonstrative aid during closing. However, Witten's grand jury

testimony was a prior inconsistent statement that the district court should have allowed the government to admit as substantive evidence. *See United States v. Mayberry*, 540 F.3d 506, 515–16 (6th Cir. 2008). Given that the government should have been allowed to admit this testimony as substantive evidence, it was not error to allow the government to use it during closing.

### c. Special Agent Volk's Testimony

Daniels argues that the district court allowed Volk to testify about matters that had no relevance, including the IRS's process for determining if an individual will be prosecuted for tax violations and about the cash Witten gave to Daniels in 2013. Under Federal Rule of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Volk's testimony that Witten withheld cash is relevant to prove willfulness. The increasing amounts of withheld cash make it more probable that Daniels intentionally violated his duty to pay his taxes and make it less probable that Daniels could have mistakenly overlooked the withheld cash. The district court did not abuse its discretion in finding this evidence relevant.

Neither did the district court abuse its discretion in allowing Volk to testify about the IRS investigative process that led to charging Daniels for tax evasion. Daniels argues that the evidence was irrelevant and inflammatory in violation of Rule 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. However, because defense counsel raised a relevancy objection under Rule

401 as opposed to a Rule 403 objection, he has failed to preserve that argument for appeal and plain error review applies. *United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009) (outlining the elements of the plain-error test). Here, there is no clear and obvious error. The testimony satisfied Rule 401 by explaining the reasons for the investigation and any prejudicial impact was low. Therefore, the district court did not abuse its discretion in permitting the testimony.

Daniels makes a cursory argument as to why these errors are cumulatively prejudicial. Considered cumulatively, we find no error, but even if such error occurred, it did not "produce a trial setting that [was] fundamentally unfair." *Trujillo*, 376 F.3d at 614 (citation omitted).

### C. Amount of Tax Loss

We review de novo a district court's legal conclusions interpreting the Sentencing Guidelines, *United States v. Tatum*, 518 F.3d 369, 372 (6th Cir. 2008), but we give deference to the district court's factual tax loss findings, *see United States v. Webb*, 335 F.3d 534, 537 (6th Cir. 2003).

Under the Guidelines, a defendant's base offense level for tax evasion is determined by the amount of the tax loss. U.S.S.G. § 2T1.1(c)(1). The tax loss "is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." *Id.* However, "[i]f the offense involved failure to file a tax return, the tax loss is the amount of tax that the taxpayer owed and did not pay." U.S.S.G. § 2T1.1(c)(2).

The district court calculated Daniels's tax loss under (c)(2) as opposed to (c)(1) because Daniels failed to file taxes for tax years 2011 and 2012. Daniels argues that the district court erred because he was convicted only of tax evasion, not failure to file. However, under the Guidelines, the district court is allowed to consider all relevant conduct in determining the loss.

U.S.S.G. § 1B1.3. This includes even uncharged conduct. *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994). Application Note 2 of § 2T1.1 states that "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1 cmt. n.2. Accordingly, so long as the failure to file was part of the "same course of conduct or common scheme," the district court could include it as part of the tax loss.

Daniels's failure to file was part of the same course of conduct as the tax evasion. Application Note 2 of § 2T1.1 states that only "clearly unrelated" conduct should not be considered part of the same course of conduct. When Daniels's failure to file his tax returns is viewed in light of his other conduct, including keeping a double set of books, not providing complete information to his accountant, and not filing his taxes on time, a pattern of violations emerges. *See* U.S.S.G. § 2T1.1 cmt. n.2. Under the Guidelines, the district court was permitted to include this conduct in calculating the tax loss.

### III. CONCLUSION

The district court did not err in determining that there was sufficient evidence to convict Daniels or that Daniels's uncharged conduct could be included in the amount of his tax loss under the Guidelines. Nor did the district court's alleged errors cumulatively prejudice Daniels. Accordingly, we affirm Daniels's conviction and sentence.