T.C. Memo. 2009-77

UNITED STATES TAX COURT

THOMAS P. BRENNAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13919-06.                    Filed April 9, 2009.

Thomas P. Brennan, pro se.

<u>Thomas M. Rath</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Thomas P. Brennan petitioned the Court for
redetermination of the following deficiencies in Federal income
tax and penalties:

| Year | Deficiency | Additions to Tax Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------|------|------|------|
| 1992 | $26,717 | $19,370 | $6,679 | $1,165 |
| 1993 | 10,904 | 7,905 | 2,726 | 457 |
| 1994 | 17,705 | 12,836 | 4,426 | 919 |
| 1995 | 1,316 | 954 | 329 | --- |

The issues for decision after concessions[1] are: (1) Whether petitioner had deficiencies in 1992, 1993, 1994, and 1995 (the years at issue) of $26,717, $10,904, $17,705, and $1,316, respectively; (2) whether petitioner is liable for the addition to tax under section 6651(f) for the years at issue; (3) whether petitioner is liable for the addition to tax under section 6651(a)(2) for 1992, 1993, and 1994; and (4) whether petitioner is liable for the addition to tax under section 6654 for 1992, 1993, and 1994.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference. At the time petitioner filed his petition, he resided in Pennsylvania. During the years at issue

---

[1]Respondent concedes the addition to tax under sec. 6651(a)(2) for 1995. Respondent further concedes that petitioner's unreported income for 1993 and 1994 should be reduced by $3,730 and $27,555, respectively.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

petitioner's only income was derived from the business of Harbor Light Limited Partnership and the real estate activities of TP Brennan Real Estate, Inc.

I.   Harbor Light Limited Partnership

On May 25, 1984, petitioner formed the Harbor Light Limited Partnership (Harbor Light) in New Jersey.  Petitioner served as Harbor Light's general partner alongside 10 limited partners. Harbor Light operated the Harbor Light Restaurant in Stone Harbor, New Jersey, and conducted other business from 1984 through 1992.

As the general partner of Harbor Light, petitioner was responsible for preparing and filing tax returns on its behalf. On March 6, 1993, petitioner signed Harbor Light's final Form 1065, U.S. Partnership Return of Income, for 1992.  On March 11, 1993, petitioner filed the Form 1065 with the Internal Revenue Service (IRS).  The Form 1065 was also signed by Joseph M. Brennan, a paid preparer and certified public accountant.

For the taxable year 1992 petitioner received a Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., from Harbor Light which reported his distributive share of partnership income as follows:  (i) Ordinary income of $11,612; (ii) interest income of $8,359; and (iii) net gain under section 1231 of $23,683.  Petitioner failed to report his distributive share of partnership income from Harbor Light.

## II.  TP Brennan Real Estate, Inc.

On July 11, 1985, TP Brennan Real Estate, Inc. (TP Brennan), was incorporated in New Jersey.  TP Brennan was engaged in the business of real estate sales and rentals throughout the years at issue.  Petitioner was a registered real estate agent and the sole shareholder, president, and director of TP Brennan.  Petitioner was also responsible for preparing and filing tax returns on behalf of TP Brennan.

From 1989 through 1995 William Labrum (Mr. Labrum) worked as a real estate agent for TP Brennan and was paid by check on a commission basis.  Mr. Labrum was married to petitioner's daughter, Tracey (Mrs. Labrum), during the years at issue.

TP Brennan filed Forms 1120, U.S. Corporation Income Tax Return, for 1986 and 1987.  TP Brennan requested an extension of time to file a Federal income tax return for 1988 but ultimately failed to file a return for that year.  TP Brennan also did not file Federal income tax returns for 1989 through 1995.

On February 25, 1992, petitioner signed Form 1096, Annual Summary and Transmittal of U.S. Information Returns, for TP Brennan for 1991.  The address reported on the return for the corporation was 2528 Dune Drive, Avalon, New Jersey.

## III.  Petitioner's Federal Income Tax Return Filing History

Petitioner filed Forms 1040, U.S. Individual Income Tax Return, for 1985, 1986, and 1988.  Petitioner requested

extensions of time to file Federal income tax returns for 1987, 1996, 1997, and 1998 but failed to file returns for those years.  Petitioner also failed to file Federal income tax returns for 1989 through 1995.

IV.  Catalyst & Labrum/Prabhakar Checking Accounts

A.  Establishment

On June 8, 1990, Catalyst Enterprises, Inc. (Catalyst), was incorporated in New Jersey.  The initial registered address for Catalyst was the same as that for TP Brennan, 2528 Dune Drive, Avalon, New Jersey.  The incorporator of Catalyst was petitioner's attorney, Thomas Rossi.  Catalyst was initially formed at petitioner's request to explore one or more business ventures petitioner was considering.  Catalyst did not obtain a Federal employment identification number and did not file any Federal income tax returns.  Catalyst's certificate of incorporation listed petitioner as a board member and its corporate agent.

In 1990 petitioner opened the Catalyst checking account. Petitioner had signatory authority over the Catalyst account. Mr. Labrum also occasionally wrote checks on the Catalyst account, but only at the discretion of petitioner.

With the exception of a 3-month period in 1994, petitioner deposited the gross receipts of TP Brennan and the distributions he received from Harbor Light into the Catalyst checking account

throughout the years at issue. Petitioner used the Catalyst account as the operating account for TP Brennan and to pay his personal expenses.

In 1992 petitioner opened the Labrum/Prabhakar checking account to receive the payments petitioner made for renting his home and to pay his mortgage, property insurance, and real estate tax expenses. Before he opened the Labrum/Prabhakar account, petitioner's home had gone through foreclosure and was purchased by petitioner's friend Mahaveer Prabhakar (Mr. Prabhakar) for purposes of leasing it to petitioner. Mr. and Mrs. Labrum were listed as joint owners on the account and joint tenants on the deed because Mr. Prabhakar did not want either asset to be included in his estate.

During the 3-month period in 1994 when petitioner did not deposit the gross receipts of TP Brennan into the Catalyst account, petitioner deposited them into the Labrum/Prabhakar account. During this period petitioner used the Labrum/Prabhakar account as TP Brennan's operating account. Petitioner used the income earned by TP Brennan to make the lease payments on his personal residence and to pay personal expenses.

B. <u>Personal Expenditures</u>

1. <u>1992</u>

In 1992 checks totaling $20,567 were written to cash on the Catalyst account and cashed for petitioner's personal use.

Petitioner also wrote checks on the Catalyst account to pay a variety of personal expenses: (i) Utility, cable television, and telephone bills totaling $11,630; (ii) personal medical expenses of $1,584; (iii) payments to family members of $8,500; and (iv) other personal expenses of $15,198.

In 1992 petitioner withdrew $25,221 of the gross receipts from his real estate business from the Catalyst account and deposited it into the Labrum/Prabhakar account. Petitioner used $14,460 of these deposits to pay the rent for his personal residence.

### 2. 1993

In 1993 checks totaling $30,263 were written to cash on the Catalyst account and cashed for petitioner's personal use. Petitioner also wrote checks on the Catalyst account to pay a variety of personal expenses: (i) Utility, cable television, and telephone bills totaling $9,113; (ii) medical bills of $4,912; (iii) medical insurance payments of $4,026; (iv) payments to family members of $2,341; and (v) other personal expenses of $16,548, including the purchase of a 1973 Corvette which petitioner titled in Catalyst's name.

Petitioner withdrew $47,442 of the gross receipts from his real estate business from the Catalyst account and deposited it in the Labrum/Prabhakar account. Petitioner used $26,926 of these deposits to pay the rent for his personal residence.

Petitioner also made a gift or loan of $28,000 to the Labrums using funds from his real estate business.

### 3. 1994

In 1994 checks totaling $19,200 were written to cash on the Catalyst account and cashed for petitioner's personal use. Petitioner also wrote checks on the Catalyst and Labrum/Prabhakar accounts to pay a variety of personal expenses: (i) Utility, cable television, and telephone bills totaling $7,801; (ii) medical bills of $2,317; (iii) medical insurance payments of $4,974; (iv) payments to family members of $150; and (v) other personal expenses of $1,539.

In 1994 petitioner deposited $82,267 of the gross receipts from his real estate business into the Labrum/Prabhakar account. These receipts were either withdrawn from the Catalyst account or deposited into the Labrum/Prabhakar account. Petitioner used $30,859 of these deposits to pay the rent for his personal residence.

### 4. 1995

In 1995 petitioner deposited $64,255 of gross receipts from TP Brennan into the Catalyst account. Petitioner withdrew $14,540 of these funds for personal use.

V.   Criminal Case

In 1995 respondent's Collection Division was assigned to collect the outstanding employment tax liabilities of TP Brennan and to secure delinquent individual and corporate returns from petitioner and TP Brennan.  The Collection Division referred the case to the Criminal Investigation Division.  In the criminal investigation respondent determined that TP Brennan failed to file Federal income tax returns and diverted its income to petitioner for his personal use through the Catalyst and Labrum/Prabhakar accounts from 1992 through 1994.

Respondent determined that TP Brennan failed to report gross receipts of $210,359, $134,171, and $115,908 for 1992, 1993, and 1994, respectively.  Petitioner did not dispute the amounts or sources of these gross receipts at any time.

Respondent determined that petitioner had unreported income for 1992, 1993, and 1994 of $58,489, $52,683, and $75,195, respectively.[3]  Petitioner did not dispute the amounts or sources of this income in his criminal case.

On January 10, 2000, petitioner was charged with three counts of income tax evasion under section 7201 and three counts of willful failure to make returns or pay taxes under section 7203 for 1992, 1993, and 1994 in the U.S. District Court for the

---

[3]The figure for 1992 includes additional income respondent determined petitioner received through petitioner's distributive share of Harbor Light.

District of New Jersey.  On May 17, 2000, petitioner was found guilty on all six counts of the indictment by a jury verdict and, on August 1, 2000, was sentenced to 30 months' imprisonment. United States v. Brennan, Criminal No. 2000-10 (DRD) (D. N.J. Aug. 9, 2000), affd. 33 Fed Appx. 601 (3d Cir. 2002).  Petitioner also was ordered to file his delinquent returns.

On August 10, 2000, petitioner appealed his criminal conviction to the U.S. Court of Appeals for the Third Circuit. On February 19, 2002, petitioner's criminal conviction was affirmed.

## VI.  Civil Case

After petitioner's criminal conviction, Revenue Agent Mark Fillion (Mr. Fillion) was assigned to the civil examination of petitioner for the years at issue.  Petitioner refused to file his delinquent returns, and Mr. Fillion prepared substitutes for returns under section 6020(b) for petitioner and TP Brennan for 1992, 1993, and 1995.

On October 20, 2005, at a meeting with petitioner and his parole officer, Agent Fillion presented petitioner with the substitutes for returns, including a civil report, but petitioner refused to take them.

On April 17, 2006, respondent mailed a notice of deficiency to petitioner for the years at issue.  Petitioner filed a timely petition and later an amended petition with this

Court, and a trial was held on April 21, 2008, in Philadelphia, Pennsylvania.

## VII.  Frivolous Arguments

The record indicates that petitioner raised several frivolous tax-protester arguments throughout his criminal and civil case:  (i) During his criminal trial, petitioner argued that the Internal Revenue Code and regulations did not apply to him; (ii) in his criminal appeal, petitioner argued that payment of the Federal income tax is not mandated by any Federal statute or regulation;[4] (iii) during his civil examination, petitioner did not dispute any specific item of unreported income, but rather argued that Mr. Fillion did not have the authority to prepare substitutes for returns; (iv) in his petition, petitioner claimed that the Paperwork Reduction Act prohibited respondent's assessment; and (v) in his amended petition and at trial, petitioner claimed that respondent lacked the authority to issue a notice of deficiency and that no statute required him to pay income tax.

## OPINION

## I.  Petitioner's Federal Income Tax Deficiencies

Petitioner presented tax-protester arguments that he was not liable for Federal income tax deficiencies as determined in the

---

[4]Petitioner's counsel in his criminal appeal was permitted to withdraw on the grounds that the appeal was wholly frivolous.

notices of deficiency for the years at issue, including: (1) He is not a taxpayer; (2) respondent has no jurisdiction over him; and (3) respondent lacks authority to assert income tax deficiencies. Petitioner's assertions have been rejected by this Court and other courts, and "We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984); see Stelly v. Commissioner, 761 F.2d 1113, 1115 (5th Cir. 1985) ("It is clear beyond peradventure that the income tax on wages is constitutional."); United States v. Romero, 640 F.2d 1014, 1016 (9th Cir. 1981) ("Compensation for labor or services, paid in the form of wages or salary, has been universally held by the courts of this republic to be income, subject to the income tax laws currently applicable."); Wetzel v. Commissioner, T.C. Memo. 2005-211 (rejecting as frivolous the argument that the taxpayer was not a taxpayer); Nunn v. Commissioner, T.C. Memo. 2002-250 (rejecting as without merit the argument that the Commissioner had no jurisdiction over the taxpayer or his documents). The Court rejects petitioner's tax-protester arguments as frivolous and without merit.

Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source derived". Section 1 imposes a tax on individuals for taxable

income received.  The liability for the payment of the income tax is on the individual earning the income.  Lucas v. Earl, 281 U.S. 111, 114-115 (1930).

Respondent determined that in the years at issue petitioner received and failed to report gross income from Harbor Light and TP Brennan of $102,323 for 1992, $48,954 for 1993, $66,840 for 1994, and $14,540 for 1995.  Respondent also determined petitioner failed to file Federal income tax returns for the years at issue.

In an unreported income case the Commissioner is required to make some evidentiary showing to link the taxpayer to income-producing activity or otherwise to identify a likely source of income.  Respondent has satisfied this burden of going forward by submitting a record of petitioner's bank deposits, which are prima facie evidence of income.  See Tokarski v. Commissioner, 87 T.C. 74 (1986).

Generally, the taxpayer has the burden of proving the Commissioner's determinations are in error.  Rule 142(a). Petitioner failed to produce any evidence to contradict or discredit respondent's determinations.  Petitioner testified that the income generated by Harbor Light and TP Brennan might belong to relatives, but his testimony was unspecific and self-serving. Petitioner's testimony is not credible.  The record is devoid of any evidence which would indicate that petitioner did not receive

unreported income from Harbor Light and TP Brennan for the years at issue.  For the foregoing reasons, the Court finds that petitioner received and failed to report gross income for the years at issue in the amounts respondent determined.

II.  Additions to Tax

A.   Section 6651(f)

Section 6651(f) imposes an addition to tax of up to 75 percent of the amount of tax required to be shown on the tax return when the failure to file a Federal income tax return timely is due to fraud.  In ascertaining whether petitioner's failure to file was fraudulent under section 6651(f), the Court considers the same elements that are considered in imposing the fraud penalty under section 6663 and former section 6653(b).  See Clayton v. Commissioner, 102 T.C. 632, 653 (1994).  In a case involving fraud, the Commissioner bears the burden of proof of establishing fraud with clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  There are two elements of fraud under the Code:  (1) Existence of an underpayment and (2) fraudulent intent with respect to some part of the underpayment.  Sec. 7454(a); Rule 142(b); Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), affg. 99 T.C. 370 (1992) and T.C. Memo. 1992-616; Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Stone v. Commissioner, 56

T.C. 213, 223 (1971); <u>Otsuki v. Commissioner</u>, 53 T.C. 96, 105 (1969).

### 1.   1992, 1993, and 1994

To establish that there was an underpayment in 1992, 1993, and 1994 and that a portion of the underpayment for each year was due to fraud, respondent relies on petitioner's criminal convictions under sections 7201 and 7203.  Respondent argues that petitioner's convictions are binding on petitioner and that under the doctrine of collateral estoppel petitioner is estopped from denying that for the years 1992, 1993, and 1994 he fraudulently failed to file returns.  We agree.

### a.   Underpayment of Tax

Petitioner was convicted under section 7203 for willfully failing to file returns for 1992, 1993, and 1994.  It is well settled that a taxpayer's conviction under section 7203 for a given year conclusively establishes the willfulness of that taxpayer's failure to file returns.  <u>Wilkinson v. Commissioner</u>, T.C. Memo. 1997-410.  Petitioner is thus estopped from denying that he underpaid his income tax and failed to file returns for 1992, 1993, and 1994.

### b.   Fraudulent Intent

A conviction under section 7203 for willful failure to file does not conclusively establish the fraudulent intent required under section 6651(f).  Accordingly, we must look to petitioner's

conviction for willfully attempting to evade income tax under section 7201 for 1992, 1993, and 1994. This Court addressed the effect of convictions under section 7201 on determinations made under section 6653(b) in Amos v. Commissioner, 43 T.C. 50, 55-56 (1964), affd. 360 F.2d 358 (4th Cir. 1965). In Amos this Court concluded that the fraudulent intent required under section 6653(b) is included within the fraudulent intent element of a conviction under section 7201. A finding in a criminal proceeding that a taxpayer willfully attempted to evade income tax under section 7201 therefore is binding on that taxpayer under the doctrine of collateral estoppel in a subsequent civil proceeding involving a tax deficiency for the same year. Tomlinson v. Lefkowitz, 334 F.2d 262 (5th Cir. 1964); Brooks v. Commissioner, 82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985); Amos v. Commissioner, supra at 55-56; Deletis v. Commissioner, T.C. Memo. 1995-512; Knoff v. Commissioner, T.C. Memo. 1992-624; Savage v. Commissioner, T.C. Memo. 1992-129. Accordingly, petitioner's convictions under section 7201 for 1992, 1993, and 1994 estop him from disputing that a portion of the underpayment he made for those years was due to fraud.

2.  1995

a.  Underpayment of Tax

Respondent must first show by clear and convincing evidence that petitioner made an underpayment of tax for 1995.  See sec. 7454(a).  Because respondent alleges that the underpayment for 1995 stems from petitioner's diversions from TP Brennan, respondent must also establish that these diversions represented a constructive distribution of TP Brennan's profits under section 301(c) as distinct from a return of capital.  See Boulware v. United States, 552 U.S. ___, 128 S. Ct. 1168 (2008).

Respondent demonstrated through testimony, check records, payment schedules, and other documentation that petitioner received income in 1995 in the form of diversions from TP Brennan and failed to file an income tax return.  The record establishes that the 1995 earnings and profits of TP Brennan exceeded the total of the specific item diversions for that year. Accordingly, petitioner's diversions from TP Brennan in 1995 constituted a constructive distribution of TP Brennan's profits, and we find that respondent has met his burden of proving that petitioner made an underpayment of tax and failed to file an income tax return for 1995.

b.  Fraudulent Intent

Respondent must establish that petitioner's failure to file an income tax return for 1995 was due to fraud.  See Niedringhaus

v. Commissioner, 99 T.C. 202, 210 (1992); Ferguson v. Commissioner, T.C. Memo. 2004-90. Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence and reasonable inferences from the facts. Petzoldt v. Commissioner, supra at 699. Courts have developed a nonexclusive list of factors, or "badges of fraud", that demonstrate fraudulent intent. Niedringhaus v. Commissioner, supra at 211. These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash. Id.; see also Spies v. United States, 317 U.S. 492, 499 (1943); Morse v. Commissioner, 419 F.3d 829, 832 (8th Cir. 2005), affg. T.C. Memo. 2003-332; Recklitis v. Commissioner, supra at 910. The taxpayer's business background is also relevant to a determination of fraud. See Wheadon v. Commissioner, T.C. Memo. 1992-633. Although no single factor is necessarily sufficient to establish fraud, a combination of factors may constitute persuasive evidence. Niedringhaus v. Commissioner, supra at 211.

The record indicates that petitioner's behavior with respect to his income in 1995 shows multiple badges of fraud, as follows.

(1) Petitioner understated his income by consistently failing to report any income.

(2) Petitioner has provided no plausible explanation for his failure to file returns, and maintained frivolous tax-protester arguments regarding his obligation to file returns and pay taxes.

(3) Petitioner attempted to conceal his income by funneling proceeds from Harbor Light and TP Brennan into the Catalyst and Labrum/Prabhakar accounts and by using those accounts for personal expenditures.

(4) Petitioner repeatedly failed to cooperate with tax authorities.

(5) Petitioner engaged in a pattern of conduct intended to mislead tax authorities by repeatedly failing to file returns, siphoning money from his businesses for personal use, and claiming that he was exempt from taxation.

(6) Petitioner's testimony that the income generated by Harbor Light and TP Brennan in 1995 belonged to relatives was not credible.

(7) Petitioner failed to file Federal income tax returns for over a decade.

(8) The record indicates that petitioner often dealt in cash. Petitioner wrote checks to cash from the Catalyst account and used the money for personal expenditures.

(9) Petitioner is an experienced businessman who demonstrated that he knew how to file returns and pay taxes.

As a result of the number of badges of fraud, we find that respondent has shown by clear and convincing evidence that petitioner's failure to file an income tax return for 1995 was due to fraud within the meaning of section 6651(f).

B. Section 6651(a)(2)

Respondent also determined that petitioner was liable for the addition to tax imposed by section 6651(a)(2) for failure to pay the amounts of tax shown on his returns for 1992, 1993, and 1994.[5] Section 6651(a)(2) provides for an addition to tax of 0.5 percent per month up to 25 percent for failure to pay the amount shown on a return. This addition to tax, however, applies only in the case where a return has been filed. See Spurlock v. Commissioner, T.C. Memo. 2003-124; see also Burr v. Commissioner, T.C. Memo. 2002-69, affd. 56 Fed. Appx. 150 (4th Cir. 2003); Heisey v. Commissioner, T.C. Memo. 2002-41, affd. 59 Fed. Appx. 233 (9th Cir. 2003).

---

[5]Respondent is unable to find the substitute for return he prepared for 1995 and concedes the addition to tax for that year.

Respondent relies on section 6651(g)(2) to contend that a return that the Secretary prepared under section 6020(b) is treated as "the return filed by the taxpayer for purposes of determining the amount of the addition" under section 6651(a)(2). Section 6651(g)(2), however, is effective only for returns due after July 30, 1996. Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 1301, 110 Stat. 1475 (1996). As his returns were due before this date, petitioner is not liable for additions to tax under section 6651(a)(2) for any of the years at issue.

C.   Section 6654(a)

Respondent determined that petitioner is liable for additions to tax under section 6654(a) for failure to make estimated tax payments for 1992, 1993, and 1994. A taxpayer has an obligation to pay estimated tax for a particular year only if he has a "required annual payment" for that year. Sec. 6654(d). A "required annual payment" generally is equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return. Sec. 6654(d)(1); Wheeler v. Commissioner, 127 T.C. 200, 210-212 (2006), affd. 521 F.3d 1289 (10th Cir. 2008); Heers v. Commissioner, T.C. Memo. 2007-10. To show a required annual payment for 1992, respondent must also show proof

of petitioner's failure to file a return for 1991.  See <u>Wheeler</u>
<u>v. Commissioner</u>, <u>supra</u> at 210-212.

Respondent introduced evidence to prove petitioner was
required to file Federal income tax returns for 1992, 1993, and
1994.  Petitioner failed to file returns and failed to make any
estimated tax payments for those years.  Additionally, the record
indicates that petitioner failed to file a return for 1991.
Thus, the Court finds that respondent has met his burden of
production under section 7491(c) with regard to the additions to
tax under section 6654(a).  Petitioner offered no evidence to
refute respondent's evidence or to establish a defense to
respondent's determination that petitioner is liable for the
section 6654 additions to tax.  Therefore, the Court finds that
petitioner is liable for additions to tax under section 6654 for
1992, 1993, and 1994.

In reaching our holdings herein, we have considered all
arguments made, and, to the extent not mentioned above, we
conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>under Rule 155</u>.