# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 08-2912/08-2916/08-2918

_____

| | | |
|---|---|---|
| Jon W. Nelson; Kristi Nelson; | * | |
| Steven P. Nelson; Jaime Nelson; | * | |
| Wayne E. Nelson; Joann Nelson, | * | |
| | * | |
| Appellants, | * | Appeals from the United States |
| | * | Tax Court. |
| v. | * | |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 13, 2009
Filed: June 10, 2009

_____

Before LOKEN, Chief Judge, BYE, Circuit Judge, and MILLER, District Judge.[1]

_____

BYE, Circuit Judge.

Jon W. Nelson, Kristi Nelson, Steven P. Nelson, Jaime Nelson, Wayne E. Nelson, and Joann Nelson (collectively the Nelsons), appeal the tax court's[2] decision

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[2]The Honorable Stephen J. Swift, United States Tax Court Judge.

disallowing their deferment, under Internal Revenue Code (IRC) § 451(d), of crop insurance proceeds to the tax year following their receipt.  We affirm.

I

The Nelsons are engaged in two joint farming operations, WJS Nelson, Ltd. LLP, and WJS Nelson Partnership.  Among other crops, the Nelsons raise sugar beets. Their normal business practice would be to report sixty-five percent of the income from sugar beet production in the tax year the crop is produced and thirty-five percent of the income in the following tax year.  In 2001, the Nelsons' sugar beet crop was destroyed by unusually wet conditions.  The crop was covered by insurance, and the farming operations collected $201,919 in crop insurance payments that year.  Had the crop not been destroyed, the Nelsons' normal practice would have been to report sixty-five percent of the income derived from sugar beets in tax year 2001 and thirty-five percent in tax year 2002.  Instead, in tax year 2001, the Nelsons reported the thirty-five percent of sugar beet income carried over from their 2000 sugar beet crop and reported the $201,919 in insurance proceeds as income in tax year 2002.

The Internal Revenue Service (IRS) disallowed the deferment and assessed tax deficiencies for tax year 2001.  The Nelsons petitioned the tax court and it held § 451(d)'s election to defer crop insurance payments was not available to them because it only applies when all the income from a year's crop production is deferred to another tax year.  Because the Nelsons' practice was to defer thirty-five percent of their sugar beet crop income, the tax court held the insurance payment could not be deferred.  On appeal, the Nelsons argue the tax court erred in holding § 451(d) inapplicable unless their customary practice was to defer all of their sugar beet income to the tax year following the year the crop was produced.  They argue the Commissioner of Internal Revenue has held it sufficient to show a "substantial portion" of the income is deferred, and the thirty-five percent they customarily defer is a substantial portion.  Alternatively, the Nelsons argue they qualify for the § 451(d)

deferment because the farming operations defer more than fifty percent of the combined income derived from all crop production.

## II

The court of appeals has exclusive jurisdiction to review the decisions of the tax court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a). When the issue on appeal is purely legal, our review is de novo. Estate of Robertson v. Comm'r, 15 F.3d 779, 781 (8th Cir. 1994) (citation omitted). The sole issue in this appeal is whether the language of § 451(d) supports the Nelsons' deferment of the crop insurance proceeds received in 2001 to tax year 2002.

Section 451(d) states:

> In the case of insurance proceeds received as a result of destruction or damage to crops, a taxpayer reporting on the cash receipts and disbursements method of accounting may elect to include such proceeds in income for the taxable year following the taxable year of destruction or damage, if he establishes that, under his practice, income from such crops would have been reported in the following taxable year . . . . An election under this subsection for any taxable year shall be made at such time and in such manner as the Secretary prescribes.

Treasury Regulation § 1.451-6(a)(1), implementing § 451(d), provides in part:

> [A] taxpayer reporting income on the cash receipts and disbursements method of accounting may elect to include insurance proceeds received as a result of the destruction of, or damage to, crops in gross income for the taxable year following the taxable year of the destruction or damage, if the taxpayer establishes that, under the taxpayer's normal business practice, the income from those crops would have been included in gross

-3-

income for any taxable year following the taxable year of the destruction or damage . . . .

The rationale for § 451(d) was Congress' recognition that many farmers sell their crops the year after they are produced. On those occasions when major crop losses occur that are covered by insurance, farmers receive income by selling the previous year's crop and from the current year's crop in the form of insurance proceeds. Absent § 451(d)'s provision allowing deferment of the insurance payments to the following tax year, a farmer would be unable to spread out the two years of income to comport with normal business practices and would be required to report two years of income in one tax year. S. Rep. No. 91-552, at 106-107 (1969), reprinted in 1969 U.S.C.C.A.N. 2027, 2137-2138.

To alleviate problems occasioned by having to report two years of income in a single tax year, § 451(d) permits a taxpayer to defer crop insurance payments to the following tax year if "income from such crops would have been reported in the following taxable year." Treasury Regulation § 1.451-6(a)(1) is nearly identical, but refers to "*the* income from those crops . . . ." (Emphasis added). Neither provision, however, clearly indicates whether the deferment is available to farmers who customarily defer all of their crop income or only a portion of the income. Thus, in Revenue Ruling 74-145, 1974-1 C.B. 113, the IRS clarified § 451(d), holding:

> A cash-method taxpayer who receives crop insurance proceeds in the same calendar year his grain crops were damaged and who establishes that more than 50 percent of the crop income would have been reported in the following year under his normal business practice is entitled to elect under section 451(d) of the Code to include the proceeds in income in the following year, but he may not allocate the proceeds between the two years.

The revenue ruling established what is known as the "substantial portion" test, and clearly states the deferment is only available to farmers who customarily defer

-4-

more than fifty percent of the income from the damaged crop.  Nonetheless, the Nelsons argue we should reject the IRS's requirement of more than fifty percent, and instead hold that the thirty-five percent they customarily defer constitutes a substantial portion of their sugar beet crop.  Alternatively, the Nelsons argue they meet the substantial portion test because when viewed in the aggregate, their farming operations customarily defer more than half the income from total crop production.

The Supreme Court has yet to decide what deference revenue rulings are entitled to by the courts.  It has held that reasonable interpretations of the agency's regulations as embodied in revenue rulings "attract[] substantial judicial deference." United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220 (2001).  Similarly, we have held revenue rulings are not binding, but they are authoritative.  See Oetting v. United States, 712 F.2d 358, 362 & n.3 (8th Cir. 1983).  In Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), the Supreme Court set out the framework we follow when considering what weight to give rulings, interpretations and opinions of agencies charged with implementing their congressional mandate.

> [W]hile not controlling upon the courts by reason of their authority, [the rulings, interpretations and opinions] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.  The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

Section 451(d) could be read as allowing a taxpayer to defer income from insurance proceeds if the customary practice is to defer *any* portion of the income from those crops to a subsequent tax year.  It could also be read as allowing the deferment only when *all* of the income from the crops would have been deferred.  The legislative history, however, indicates Congress intended § 451(d) to ameliorate the effects of forcing farmers to report two years of income in a single tax year.  Because

of Congress' clearly expressed intent, the IRS's revenue ruling reasonably concludes only farmers who customarily defer all or a substantial portion of their crop income to the tax year following production were intended to benefit from a § 451(d) deferment of insurance proceeds.

In this instance, if the Nelsons deferred the insurance proceeds received in 2001, the problem Congress sought to resolve by enacting § 451(d) would not be avoided. Section 451(d) requires the taxpayer to defer all of the insurance proceeds if he makes the deferment election. Accordingly, the Nelsons would have been required to defer 100% of the insurance proceeds, even though their normal practice was to only defer thirty-five percent of the income from sugar beet production. Thus, in 2001 they would have paid tax on thirty-five percent of their sugar beet crop, but in tax year 2002 they would have paid tax on 165% of their sugar beet production. We conclude the IRS's interpretation of § 451(d), which avoids a result that is clearly at odds with the legislative history, is reasonable and deserving of substantial judicial deference.

### III

We also reject the Nelsons' alternative argument that they satisfy the substantial portion test because in the aggregate their farming operations defer more than fifty percent of annual crop income. The Nelsons note Treas. Reg. § 1.451-6(a)(2) requires a farmer who receives crop insurance proceeds from two or more damaged crops, and elects to defer insurance proceeds under § 451(d), to defer all insurance proceeds attributable to crops constituting a single trade or business. They argue this language compels a finding that the substantial portion test applies to their entire farming operation, i.e., "single trade or business" and is not limited to a single crop.

Section 1.451-6(a)(2) only applies "[i]n the case of a taxpayer who receives insurance proceeds as a result of the destruction of, or damage to, two or more specific

crops . . . ." Here the insurance proceeds relate only to the Nelsons' sugar beet crop. Additionally, a farmer seeking to take advantage of the § 451(d) deferral when two or more crops are damaged must first establish qualification for such deferral. In other words, a farmer seeking to defer insurance proceeds from damage to two or more crops must show as to any of the individual crops the customary practice was to defer more than fifty percent of the income. Thus, § 1.451-6(a)(2) does not alter the substantial portion test in the way the Nelsons contend.

VI

For the reasons stated herein, the judgment of the tax court is affirmed.

_____