# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1589

_____

| | | |
|---|---|---|
| David E. Watson, P.C., | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Defendant/Appellee, | * | Appeal from the United States |
| _____ | * | District Court for the Southern |
| | * | District of Iowa. |
| United States of America, | * | |
| | * | |
| Counter-plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| David E. Watson, P.C., | * | |
| | * | |
| Cross-defendant/Appellant. | * | |

_____

Submitted: November 15, 2011
Filed: February 21, 2012

_____

Before RILEY, Chief Judge, BEAM, and BYE, Circuit Judges.

_____

BEAM, Circuit Judge.

This case concerns the Federal Insurance Contribution Act (FICA), 26 U.S.C. (I.R.C.) § 3101 et seq., and certain employment taxes FICA imposes upon employers. After a bench trial on the merits, the district court[1] rendered a tax deficiency judgment against David E. Watson, P.C. (DEWPC) for unpaid FICA tax. DEWPC appeals, and we affirm.

## I.    BACKGROUND

In 1982, David Watson (Watson) graduated from college with a bachelor's degree in business administration and a specialization in accounting. In 1983, Watson became a Certified Public Accountant (CPA) and later obtained a master's degree in taxation. In his first ten years of practice, Watson worked at two accounting firms, one of which was Ernst & Young. While at Ernst & Young, Watson began specializing in partnership taxation.

After leaving Ernst & Young, Watson obtained a 25% interest in an accounting firm located in West Des Moines, Iowa, known as Larson, Watson, Bartling & Eastman. At trial, Watson testified that he received no salary when the firm first began operations because the entity did not have money to pay him. Eventually, one partner exited and the firm added a new partner, reemerging as Larson, Watson, Bartling & Juffer, LLP (LWBJ[2]).

In 1996, Watson incorporated a business entity known as David E. Watson, P.C. Watson transferred his individual 25% interest in LWBJ to DEWPC, and thereafter DEWPC replaced Watson as a partner in LWBJ. Watson served as

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]For the sake of simplicity, we will use "LWBJ" to refer to the accounting firm both before and after it took on a new partner.

DEWPC's sole officer, shareholder, director, and employee. Through an employment agreement, DEWPC employed Watson, but Watson exclusively provided his accounting services to LWBJ for the period relevant to this dispute. From its inception, DEWPC elected to be taxed as an S Corporation.

In both 2002 and 2003, DEWPC distributed $24,000 to Watson as employment compensation. Watson testified that the LWBJ partners made the determination that LWBJ had sufficient cash flow where it could distribute $2,000 a month to each partner, regardless of the seasonality of the business. There were no documents reflecting these salary discussions, and no other LWBJ partner testified at trial. Ultimately, DEWPC is the entity that authorized and paid Watson's salary. In addition to salary, Watson, through DEWPC, received $203,651 from LWBJ as profit distributions for 2002. In 2003, Watson, through DEWPC, received $175,470 as profit distributions from LWBJ. Thus, in 2002 and 2003, after DEWPC paid Watson's salary and other expenses, it distributed all remaining cash to Watson as dividends.

The Internal Revenue Service (IRS) investigated DEWPC and determined that it underpaid certain employment taxes pursuant to FICA, see I.R.C. § 3111(a), (b), in 2002 and 2003. The IRS assessed additional tax and penalties against DEWPC for the eight quarters covering 2002 and 2003. On April 14, 2007, DEWPC paid the delinquent tax, penalty, and interest for the fourth quarter of 2002 and sought a refund from the IRS.[3] The IRS denied DEWPC's refund claim, and DEWPC sued the United States in district court. The United States counterclaimed, seeking to recover employment taxes, penalties, and interest that remained unpaid for 2002 and 2003.

---

[3] Although DEWPC designated that its payment applied to the fourth quarter of 2002, the IRS erroneously applied it to the first quarter of 2002. The parties stipulated, and we agree, that this misapplication did not deprive the district court of jurisdiction. See I.R.C. § 7422(a); 28 U.S.C. §§ 1340, 1346(a)(1).

After denying DEWPC's motion for summary judgment, the district court held a bench trial on the merits. At trial, the government's expert, Igor Ostrovsky, opined that the market value of Watson's accounting services was approximately $91,044 per year for 2002 and 2003. Ostrovsky is a general engineer with the IRS and has worked on approximately 20 to 30 cases involving reasonable compensation issues. In forming his opinion as to Watson's salary, Ostrovsky relied on several compensation surveys and studies particular to accountants. Primarily, Ostrovsky focused on the Management of an Accounting Practice (MAP) survey conducted by the American Institute of Certified Public Accountants, which contained adjustments for specific regions. Ostrovsky discovered that an owner–defined as an investor and an employee–in a firm the size of LWBJ would receive approximately $176,000 annually, which reflected both compensation and return on investment. Ostrovsky also discovered that a director–an employee with no investment interest–would receive approximately $70,000 in compensation alone. Because owners billed at rates 33% higher than directors, and because Ostrovsky viewed Watson as a de facto partner of LWBJ, Ostrovsky increased the director compensation by 33% to arrive at owner compensation or $93,000. Ostrovsky then made a downward adjustment to $91,044, accounting for untaxable fringe benefits. In reaching his conclusion, Ostrovsky used average billing rates rather than Watson's actual billing rates.

Ultimately, the district court adopted Ostrovsky's opinion and determined that the reasonable amount of Watson's remuneration for services performed totaled $91,044. Therefore, the district court rendered a tax deficiency judgment against DEWPC, which included unpaid employment taxes, penalties, and interest in the amount of $23,431.23. DEWPC now appeals.

## II.  DISCUSSION

This case presents two issues for our review. First, we must decide whether the district court erred in allowing Ostrovsky to testify as an expert witness on the issue

of compensation. Second, we must determine whether the district court properly characterized $91,044 as "wages" for the purposes of assessing FICA tax in 2002 and 2003.

We apply the same standard of review in tax refund cases as we do in other bench trials. Townsend Indus., Inc. v. United States, 342 F.3d 890, 891 (8th Cir. 2003). That is, we review the district court's findings of fact for clear error and its conclusions of law de novo. Id. We review the district court's decision to admit expert testimony for abuse of discretion, giving substantial deference to the district court. United States v. Roach, 644 F.3d 763, 763 (8th Cir. 2011) (per curiam).

### A.    Ostrovsky's Expert Testimony

DEWPC argues that the district court erred in allowing Ostrovksy to testify as an expert witness on the issue of reasonable compensation because Ostrovsky was not competent to testify on that issue. Specifically, DEWPC asserts that Ostrovsky was not qualified, changed his opinion, relied on insufficient underlying facts, and used flawed methods in rendering his opinion.

Ostrovsky is a certified business valuation analyst, but because compensation is only one component of business valuation, DEWPC deems Ostrovsky incompetent to testify as to compensation. Federal Rule of Evidence 702 governs the admission of expert testimony in this case. A witness may qualify as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Rule 702 does not rank academic training over demonstrated practical experience." Roach, 644 F.3d at 764. Here, the record reveals that Ostrovsky, as a general engineer for the IRS, spends about 40% of his time dealing with compensation issues and has worked on about 20 to 30 reasonable compensation cases. Therefore, even if Ostrovksy's education and training was not specifically tailored to compensation issues, he certainly has "demonstrated practical experience" qualifying him as an expert in the field. See id.

Accordingly, the district court did not abuse its discretion in determining Ostrovsky was qualified to render an expert opinion on Watson's compensation.

In addition to challenging his qualifications, DEWPC asserts that Ostrovsky was not a competent expert witness because his opinion as to the value of Watson's services changed over the course of the proceedings. It is true that Ostrovsky's opinion changed as the proceedings progressed. Before Watson's deposition, Ostrovsky's initial assessment was that Watson's salary in the disputed years should have been no less than $184,876. After discovering errors in his initial assessment and learning additional facts through Watson's deposition, Ostrovsky eventually revised his report and arrived at his final estimate. The district court made a specific finding on this point and found Ostrovsky competent. DEWPC fails to cite any authority supporting its contention that Ostrovky's revised opinion rendered his testimony incompetent. In fact, it appears Ostrovsky properly updated his expert report, giving DEWPC ample notice of his revised opinions. See Fed. R. Civ. P. 26(a)(2)(B), (e)(2). Under these circumstances, we see no reason why Ostrovsky's revised opinion would be incompetent. Thus, we see no abuse of discretion.

DEWPC also argues that Ostrovsky failed to consider certain facts in rendering his opinion. Generally, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Nebraska Plastics, Inc. v. Holland Colors Am., Inc., 408 F.3d 410, 416 (8th Cir. 2005). However, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the [fact-finder], it must be excluded." Id. Previously, we have determined that when an expert "fail[s] to take into account a plethora of specific facts" his or her testimony is properly excluded. Id. at 417.

Here, DEWPC cross-examined Ostrovsky and questioned the factual basis for his opinion. The district court could take this into account when assessing Ostrovky's

-6-

credibility. Based on the record, however, Ostrovsky did not fail to consider "a plethora of facts" rendering his opinion "fundamentally unsupported." Id. at 416-17. To be sure, Ostrovsky even revised his opinion to reflect a lower salary after he considered new facts revealed at Watson's deposition. Therefore, after reviewing the factual basis for Ostrovky's opinion, we conclude the district court did not abuse its discretion in admitting the testimony.

Finally, according to DEWPC, the district court should have excluded Ostrovky's testimony because his conclusions were the product of flawed methods. In determining whether expert testimony should be admitted, the district court must decide if "the expert's methodology is reliable and can be reasonably applied to the facts of the case." Eckelkamp v. Beste, 315 F.3d 863, 868 (8th Cir. 2002). Pursuant to Daubert,[4] the district court must conduct this initial inquiry as part of its gatekeeping function. Glastetter v. Novartis Pharm. Corp., 252 F.3d 986, 988 (8th Cir. 2001) (per curiam). However, Daubert is meant to "protect *juries* from being swayed by dubious scientific testimony." In re Zurn Pex Plumbing Prods. Liab. Litig. (In re Zurn), 644 F.3d 604, 613 (8th Cir. 2011) (emphasis added). When the district court sits as the finder of fact, "'[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'" Id. (alteration in original) (quoting United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005)). Thus, we relax Daubert's application for bench trials. Id.

In the present case, although DEWPC objected to Ostrovsky's qualifications, the record does not show that DEWPC ever raised an objection to the methods or underlying science Ostrovsky employed to arrive at his conclusions. See McKnight ex rel. Ludwig v. Johnson Controls, Inc., 36 F.3d 1396, 1407 (8th Cir. 1994) (rejecting argument that district court must exercise gatekeeping function without an

---

[4]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

objection). Nevertheless, even if DEWPC did raise a proper <u>Daubert</u> challenge before the district court, we conclude the court acted within its discretion. At most, DEWPC has expressed a disagreement with the underlying assumptions Ostrovsky made in his calculations. This "mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." <u>Synergetics, Inc. v. Hurst</u>, 477 F.3d 949, 956 (8th Cir. 2007). Rather, if DEWPC thought other assumptions and methods were more appropriate, it had the opportunity to make this apparent "through cross-examination and by presenting [its] own expert witness." <u>Id.</u> Finally, with a relaxed <u>Daubert</u> standard in this bench trial, <u>see</u> <u>In re Zurn</u>, 644 F.3d at 613, we conclude the district court did not abuse its discretion in admitting Ostrovksy's expert testimony.

## B.    FICA Tax

FICA imposes "on every employer an excise tax, with respect to having individuals in [its] employ," calculated as a certain percentage of wages the employer pays "with respect to employment."[5] I.R.C. §§ 3111(a), (b). The term "wages" is defined as "all remuneration for employment," with exceptions that do not apply to this case. <u>Id.</u> § 3121(a). Although the term "wages" is defined broadly, an employer need not pay FICA taxes on "other types of employee income, such as dividends." <u>HB & R, Inc. v. United States</u>, 229 F.3d 688, 690 (8th Cir. 2000). In characterizing employer payments, "[t]he name by which the remuneration for employment is designated is immaterial." Treas. Reg. § 31.3121(a)-1(c). Similarly, the medium in which remuneration is paid is immaterial. <u>Id.</u> § 31.3121(a)-1(e).

When the IRS determines that a taxpayer owes the Federal Government unpaid taxes, the "assessment is entitled to a legal presumption of correctness." <u>United</u>

---

[5]The parties do not dispute that Watson was an employee of DEWPC.

States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002). Because DEWPC sought a FICA tax refund in this case, "the ultimate question for our determination is whether [DEWPC] has overpaid its tax." Iowa 80 Group, Inc. v. IRS, 406 F.3d 950, 952 (8th Cir. 2005). The taxpayer bears the burden of proving that it overpaid its taxes, and the IRS's initial assessment was wrong. Id. To meet this burden, the taxpayer must prove "the amount he is entitled to recover[,] [and] [i]t is not enough for him to demonstrate that the assessment of the tax for which refund is sought was erroneous in some respects." United States v. Janis, 428 U.S. 433, 440 (1976) (internal citation omitted).

In resolving this FICA tax dispute, the inquiry is "whether, based on the statutes and unusual facts involved, the payments at issue were made to [Watson] as remuneration for services performed." Joseph Radtke, S.C. v. United States, 895 F.2d 1196, 1197 (7th Cir. 1990) (per curiam). Where, as here, "the corporation is controlled by the very employees to whom the compensation is paid, special scrutiny must be given to such salaries, for there is a lack of arm's length bargaining." Charles Schneider & Co. v. Comm'r, 500 F.2d 148, 152 (8th Cir. 1974). Ultimately, whether payments to a shareholder "represent compensation for services or constitute a distribution of profits is essentially the determination of a matter purely of fact." Standard Asbestos Mfg. & Insulating Co. v. Comm'r, 276 F.2d 289, 294 (8th Cir. 1960) (internal quotation omitted).

When it determined the amount that constituted remuneration for employment, the district court required DEWPC to prove it paid Watson reasonable compensation, which DEWPC claims was error. According to DEWPC, because the district court applied an incorrect legal standard, it incorrectly found that $91,044 constituted Watson's wages in 2002 and 2003. To buttress this argument, DEWPC repeatedly asserts that there is no statute, regulation, or rule requiring an employer to pay minimum compensation. And, by requiring proof of reasonable compensation,

DEWPC argues, the district court imposed a minimum compensation requirement. Rather than looking to whether compensation was reasonable, DEWPC contends that the district court should have focused on taxpayer intent when characterizing the payments.

### 1. Reasonable Compensation

The concept of "reasonable compensation" is generally an issue found in the realm of income taxation. See, e.g., Charles Schneider & Co., 500 F.2d at 151. Under I.R.C. § 162(a)(1), a business may deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered" as ordinary and necessary business expenses. Historically, we have applied a factors test to determine the reasonableness of compensation in the context of a business expense deduction. See Charles Schneider & Co., 500 F.2d at 151-52 (discussing factors). Here, the district court considered these factors, among other things, in finding that the value of Watson's services was $91,044 for 2002 and 2003.

Although reasonable compensation is usually an issue found in the context of an income tax deduction, the IRS finds the concept equally applicable to FICA tax cases. In Revenue Ruling 74-44, 1974-1 C.B. 287, an S corporation distributed dividends to its two sole shareholder-employees but did not pay any wages for their services. The IRS took the position that it could recharacterize the nature of "dividend" payments for FICA tax purposes because "the 'dividends' paid to the shareholders . . . were in lieu of *reasonable compensation* for their services." Id. (emphasis added). Notwithstanding Revenue Ruling 74-44,[6] we have not had the

---

[6]DEWPC attempts to limit the effect of Revenue Ruling 74-44 by noting that Revenue Rulings do not have the same force and effect as Treasury Regulations and do not bind the court. The Supreme Court has never articulated the exact deference given to Revenue Rulings. Nelson v. Comm'r, 568 F.3d 662, 665 (8th Cir. 2009).

opportunity to decide whether a reasonableness analysis is appropriate in determining if certain payments are in fact remuneration for employment subject to FICA tax. Other jurisdictions provide guidance.

In Joseph Radtke, S.C. v. United States, 712 F. Supp. 143, 144, (E.D. Wis. 1989), aff'd per curiam, 895 F.2d 1196 (7th Cir. 1990), the taxpayer-S corporation made dividend distributions to its only shareholder-employee but did not pay him any salary. Because the shareholder-employee also served as the corporation's only director, who authorized the dividend payment, the district court applied a substance-over-form analysis and determined the employee's "'dividends' were in fact 'wages' subject to FICA . . . taxation." Id. at 145. On appeal, the Seventh Circuit affirmed, concluding that the payments "were clearly remuneration for services performed by [the shareholder-employee]." Joseph Radtke, S.C., 895 F.2d at 1197.

Drawing upon Radtke's reasoning, other courts addressing similar FICA characterization issues have evaluated the economic substance of the transaction rather than the form chosen by the taxpayer. See, e.g., Veterinary Surgical Consultants, P.C. v. Comm'r, 117 T.C. 141, 145-46 (2001) (noting that the characterization of payments as corporate distribution of net income "is but a subterfuge for reality"), aff'd sub nom., Yeagle Drywall Co. v. Comm'r, 54 F. App'x 100 (3d Cir. 2002); Spicer Accounting, Inc. v. United States, 918 F.2d 90, 93 (9th Cir. 1990) (finding that "intention of receiving the payments as dividends has no bearing on the tax treatment of these wages"). Indeed, looking at the substance of a transaction instead of its form is a hallmark principle in resolving tax disputes, see Boulware v. United States, 552 U.S. 421, 430 (2008), and one the applicable Treasury

---

However, when a Revenue Ruling reflects a longstanding and reasonable interpretation of the agency's regulations, the Ruling "attracts substantial judicial deference." United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220 (2001).

-11-

Regulations seem to compel in this case, see Treas. Reg. § 31.3121(a)-1(c) to (e). Therefore, in discovering all remuneration for employment, "the substance of the transaction as revealed by the evidence as a whole controls over the form employed; i.e., the veil of form is pierced and the entire transaction is carefully scrutinized." Haag v. Comm'r, 334 F.2d 351, 355 (8th Cir. 1964). And, in light of all the facts and circumstances of the case, scrutinizing compensation for its reasonableness may guide a court in characterizing payments for FICA tax purposes. See Joly v. Comm'r, 76 T.C.M. (CCH) 633, 1998 WL 712528, at *4 (1998) (rejecting claim that compensation was reasonable and finding that amount did "not reflect the true character of such payments"), aff'd, 211 F.3d 1269 (6th Cir. 2000) (unpublished table decision).

Turning to the present case, we conclude the district court properly determined "that the characterization of funds disbursed by an S corporation to its employees or shareholders turns on an analysis of whether the payments at issue were made as remuneration for services performed." See Joseph Radtke, S.C., 895 F.2d at 1197. This fact-intensive inquiry "is a matter to be determined in view of all the evidence." Joseph Radtke, S.C., 712 F. Supp. at 145. Here, the district court found that DEWPC understated wage payments to Watson by $67,044 based on the following evidence: (1) Watson was an exceedingly qualified accountant with an advanced degree and nearly 20 years experience in accounting and taxation; (2) he worked 35-45 hours per week as one of the primary earners in a reputable firm, which had earnings much greater than comparable firms; (3) LWBJ had gross earnings over $2 million in 2002 and nearly $3 million in 2003; (4) $24,000 is unreasonably low compared to other similarly situated accountants; (5) given the financial position of LWBJ, Watson's experience, and his contributions to LWBJ, a $24,000 salary was exceedingly low when compared to the roughly $200,000 LWBJ distributed to DEWPC in 2002 and 2003; and (6) the fair market value of Watson's services was $91,044. Based on the record, the district court did not clearly err.

-12-

### 2.    Taxpayer Intent

Although we think reasonableness is pertinent to the analysis, DEWPC urges that instead of focusing on reasonableness, the district court should have focused on DEWPC's intent.  Taxpayer intent, like reasonableness, is usually part of a § 162(a)(1) compensation deduction analysis, although less commonly employed.  See O.S.C. & Assocs. v. Comm'r, 187 F.3d 1116, 1120 (9th Cir. 1999).  As the language of § 162(a)(1) suggests, a deduction may be made if salary is both (1) "reasonable" and (2) "in fact payments purely for services."  Treas. Reg. § 1.162-7(a).  The Ninth Circuit views this as a two-pronged test, the second prong of which requires proof of a "compensatory purpose."  Elliotts, Inc. v. Comm'r, 716 F.2d 1241, 1243 (9th Cir. 1983).   Usually, courts only need to examine the first prong, i.e., whether compensation was reasonable.  Id.  Indeed, "[t]he inquiry into reasonableness is a broad one and will, in effect, subsume the inquiry into compensatory intent in most cases."  Id. at 1245.  However "[i]n the rare case where there is evidence that an otherwise reasonable compensation payment contains a disguised dividend, the inquiry may expand into compensatory intent apart from reasonableness."  Id. at 1244.  This "intent is subjective and difficult to prove."  O.S.C. & Assocs., 187 F.3d at 1120.

DEWPC turns our attention to Pediatric Surgical Assocs., P.C. v. Comm'r, 81 T.C.M. (CCH) 1474, 2001 WL 314335 (2001), to illustrate that intent is *the* determining factor for characterization purposes.  Pediatric Surgical Assocs., P.C., involved a § 162(a)(1) compensation deduction where reasonableness was not at issue.  Id. at *7.  After reviewing Pediatric Surgical Assocs., P.C., we are not convinced it stands for the proposition that taxpayer intent controls in FICA tax

characterization cases.[7]  This is especially true because <u>Pediatric Surgical Assocs.,</u> <u>P.C.</u>, was a "rare case where there is evidence that an otherwise reasonable compensation payment contains a disguised dividend."  <u>Elliotts, Inc.</u>, 716 F.2d at 1243.  However, even if intent does control, after evaluating all the evidence, the district court specifically found "Watson's assertion that DEWPC 'intended' to pay Watson a mere $24,000 in compensation for the tax years 2002 and 2003 to be less than credible."  We will not disturb this finding on appeal.  <u>See</u> <u>United States v.</u> <u>Bowie</u>, 618 F.3d 802, 814 (8th Cir. 2010) (recognizing "credibility findings are virtually unreviewable on appeal" (quotation omitted)).  Therefore, the district court's finding as to DEWPC's intent was not clearly erroneous.

DEWPC further argues that if the district court applied the principles of <u>Pediatric Surgical Assocs., P.C.</u>, it would have limited the amount it characterized as wages to the amount of revenue each shareholder-employee personally generated, less expenses.  In this case, like <u>Pediatric Surgical Assocs., P.C.</u>, non-shareholder-employees also contributed to LWBJ's earnings.  Thus, determining Watson's compensation is more complicated than if Watson had served as the only employee generating income for LWBJ.  <u>See</u> <u>Veterinary Surgical Consultants, P.C.</u>, 117 T.C. at 145 (determining that distributions of corporate net income to sole shareholder-employee were wages); <u>see also</u> Walter D. Schwidetzky, <u>Integrating Subchapters K</u>

_____

[7]Notably, DEWPC has not cited a single FICA tax characterization case where a court looked solely to the taxpayer's intent.  Also, we do not find persuasive DEWPC's attempt to distinguish more applicable FICA characterization cases on the basis that the employer-taxpayer paid no salary in those cases.  For the purposes of determining FICA wages, there is little difference if the employer pays no salary or pays a low salary that does not accurately reflect all remuneration for employment.  <u>See, e.g.</u>, <u>JD & Assocs. v. United States</u>, No. 3:04-cv-59, slip op. at 4, 10 (D.N.D. May 19, 2006) (determining that paying accountant-shareholder $19,000, $30,000, and $30,000 as annual compensation for three consecutive years did not reflect real wages for FICA purposes).

and S–Just Do It, 62 Tax Law. 749, 799 (2009) (opining that in a pure services S corporation with a sole practitioner, nearly all of the corporation's income may likely be treated as remuneration for employment under FICA).  Nevertheless, although we think evidence of shareholder-employee billings and collections may be probative on the issue of compensation, in view of all the evidence presented to the district court in this case, we see no error.  Therefore, as noted earlier, because the district court applied the correct legal standard, we affirm its determination on Watson's FICA wages.

## III.  CONCLUSION

The judgment of the district court is affirmed.

_____