T.C. Summary Opinion 2012-124

UNITED STATES TAX COURT

PATRICK M. HERBERT AND SUZANNE M. HERBERT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16483-11S.                    Filed December 26, 2012.

Patrick M. and Suzanne M. Herbert, pro se.

Shaina E. Boatright, for respondent.

SUMMARY OPINION

SWIFT, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]References to other sections are to the Internal Revenue Code applicable for
the year in issue, and all Rule references are to the Tax Court Rules of Practice and
Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $16,135 deficiency in petitioners' Federal income tax for 2007 and a penalty under section 6662(a) of $3,227.

After partial settlement, the primary issue remaining for decision is whether $52,600 petitioner Patrick Herbert received in 2007 from a subchapter S corporation should be treated as additional wages subject to employment taxes.

Background

Some of the facts have been stipulated and are so found. At the time they filed their petition, petitioners resided in Minnesota.

For the last six months of 2002 and in 2003 Patrick Herbert (petitioner) worked as a salesman and a manager for Gopher Delivery Systems (Gopher Delivery), operator of a delivery and courier business in the Minneapolis-St. Paul metropolitan area and throughout Minnesota, Wisconsin, and Iowa. For the second half of 2002 and for 2003, petitioner received total wages from Gopher Delivery as follows:

| Year | Amount |
|------|--------|
| 2002 | $13,803 |
| 2003 | 46,498 |

In 2004 petitioners purchased the courier business from the owners of Gopher Delivery, and they continued to operate it through 2009. Petitioners' courier business was operated as a subchapter S corporation under the name H & H Transportation, Inc. (H&H).

Petitioner owned 49% and petitioner Suzanne E. Herbert owned 51% of the stock in H&H. Petitioner was president and general manager and a full-time employee of H&H. Petitioner Suzanne Herbert was not employed by H&H and was not involved in H&H's day-to-day business activities.

In 2004, 2005, and 2006 petitioner received from H&H total wages as follows:

| Year | Amount |
|------|--------|
| 2004 | $25,127 |
| 2005 | 24,542 |
| 2006 | 28,452 |

To make deliveries in its three delivery trucks (a 26-foot dock truck, a 16-foot flatbed F150 turbo diesel truck, and a 2004 cargo van), H&H used contract

truck drivers whom petitioner hired. Petitioner generally paid the truck drivers weekly with checks written on one of H&H's three bank accounts.

In 2007 H&H received gross receipts of $580,220 from its delivery and courier business.

An analysis of H&H's bank accounts reflects payments in 2007 to contract truck drivers in the total amount of $306,442, which is also reflected in H&H's QuickBook records.

Over and above funds paid to the contract truck drivers for making deliveries (for 2007, $306,442 per H&H's QuickBook records) petitioner often would make supplemental cash payments to the truck drivers to compensate them for making repairs on H&H's trucks. With regard to the cash payments to the truck drivers, petitioner and H&H did not receive receipts from the truck drivers, and petitioners' records are not complete as to the amount of cash actually paid to the truck drivers in 2007.

During petitioners' operation of H&H up to some point in 2009, H&H either lost money every year or earned little income. In 2009 petitioners finally closed the business down, after losing their home on account of losses incurred in the business and their inability to make payments on a home equity loan obtained in 2004 to finance their purchase of the business.

During 2007 petitioner received from H&H approximately $60,000 that was deposited into petitioners' bank account. H&H and petitioner treated only $2,400 thereof as wages subject to employment taxes. Petitioner's receipt of this approximate $60,000 is evidenced by an analysis of petitioners' bank account. Petitioner used a portion of the H&H funds transferred into petitioners' bank account to pay with cash expenses of H&H, such as the supplemental payments to the truck drivers for truck repairs.

H&H's bank records and H&H's QuickBook records show payment of $9,148 in rent expenses.

The accountant whom petitioner and H&H used to prepare petitioners' and H&H's tax returns for 2006 and 2007 did not properly account for a number of H&H's expenses. In 2008 H&H hired a new accountant.

H&H's 2007 Form 1120S, U.S. Income Tax Return for an S Corporation, as filed with respondent reported the total gross receipts of $580,220 and reported many business expenses as costs of goods sold (COGS) in the total amount of $350,404. The reported $350,404 COGS included $331,708 for contract labor expenses, $15,766 for fuel expenses, a franchise fee of $256, and subcontractor fees of $2,674.

The $331,708 reported for contract labor expenses is approximately $25,000 more than the $306,919 reflected in H&H's Quickbook records for contract labor expenses.

Also claimed on H&H's 2007 tax return were miscellaneous transportation expense deductions totaling $86,222.45, which consisted of vehicle leases payments of $24,889.92, vehicle gas expenses of $46,117.12, auto repair expenses of $10,044.41, and other expenses of $5,171.

After additional deductions (which included rent of $36,430 and the reported wages for petitioner of $2,400[2]), H&H's 2007 Form 1120S reported net income of $1,377, and pursuant to section 1366(a)(1) the reported $1,377 net income flowed through to petitioners' 2007 joint individual income tax return.

On their Schedule E, Supplemental Income and Loss, of their 2007 joint individual Federal income tax return, petitioners reported the $1,377 flowthrough H&H income and the $2,400 as petitioner's H&H wages subject to employment taxes.

The approximate $57,600 balance of the funds that in 2007 were transferred from H&H into petitioners' bank account ($60,000 less $2,400 equals $57,600)

[2]On their 2007 joint individual Federal income tax return petitioners actually reported wages for petitioner from H&H of $2,600. For purposes of our opinion, we generally use the $2,400 H&H reported.

was not treated by H&H and petitioners as taxable wages or salary to petitioner. Rather, H&H and petitioners treated the $57,600 as cash that petitioner used to pay expenses of H&H.

On audit respondent determined that the $2,400 which H&H and petitioner reported as petitioner's 2007 wages was unreasonably low and that $55,000 (of H&H's funds transferred into petitioners' bank account in 2007) should be treated as petitioner's H&H wages subject to employment taxes. Accordingly respondent increased petitioner's H&H wages by $52,600 ($55,000 less $2,400 equals $52,600). Consistent with this adjustment to petitioner's wages, respondent also increased H&H's business expense deduction for wages paid to petitioner by $52,600. As a result, respondent's adjustment to petitioner's H&H wages produced only an increase in petitioners' employment taxes, not an increase in petitioners' income tax.

On audit respondent also disallowed for duplication $32,308 of the reported COGS contract labor expenses and all $15,766 of the reported COGS vehicle fuel expense (together totaling a disallowance of $48,074) and thereby reduced H&H's allowable deduction for COGS to $302,330 ($350,404 less $48,074 equals $302,330).

Of the total $86,222 miscellaneous transportation expenses claimed on H&H's 2007 tax return, respondent disallowed $25,579, which included $3,800 for lease payments, $11,641 for additional fuel expenses, $4,967 for repairs, and $5,171 of other expenses.

Lastly on audit respondent reduced H&H's business expense deduction for rent to $9,148, a disallowance of $27,282 from the $36,430 reported rent expense.[3]

## Discussion

### H&H Wages

Petitioners contend that H&H lost money every year and that petitioner used most of the approximately $60,000 transferred from H&H during 2007 into petitioners' bank account to pay additional H&H business expenses with cash. Petitioner argues that (over and above his reported $2,400 in H&H wages) the H&H funds he received were not used by him for personal purposes and should not be treated as wages subject to employment taxes.

Petitioner acknowledges that he lost, misplaced, or never kept receipts for many H&H expenses he paid with cash and therefore that they were not properly

---

[3]On audit respondent made a number of additional adjustments which have been settled by the parties and are not discussed herein.

recorded in H&H's Quickbook records and were not reflected on 2007 H&H's tax return.

Respondent notes that for employment tax purposes shareholder/employees of S corporations have an incentive to treat corporate payments to shareholders as something other than compensation for services rendered. Whether amounts paid to shareholders are to be treated as compensation for services (i.e., as wages or salary) and subject to employment taxes involves a question of fact. David E. Watson, P.C. v. United States, 668 F.3d 1008, 1017-1018 (8th Cir. 2012); Brewer Quality Homes, Inc. v. Commissioner, T.C. Memo. 2003-200, aff'd, 122 Fed. Appx. 88 (5th Cir. 2004).

To support his $52,600 increase in petitioner's 2007 H&H wages respondent relies largely on one year (2003) when petitioner was paid by Gopher Delivery wages of $46,498 and on petitioners' burden of proof. We note that respondent does not argue that petitioner's reported wages for Gopher Delivery and H&H in years before 2007 were unreasonably low.

We believe and accept petitioner's testimony that he in fact paid significant H&H expenses with cash using funds received from H&H. For example, petitioner credibly testified that after finishing deliveries, truck drivers often would assist with repairs on the trucks and that he would pay the drivers cash for

their assistance. No evidence indicates any unusual personal use by petitioners of the funds in question received from H&H.

In spite of the limited evidence before us, we believe it improper and excessive to charge petitioner with receipt from H&H in 2007 of $52,600 in additional wages. However, we also believe petitioner's reported H&H wages of $2,400 are unreasonably low.

To estimate what portion of the funds petitioner received from H&H in 2007 is to be treated as wages, we believe it appropriate to average petitioner's wages for 2002 through 2006 and to use the average wage amount as the total for petitioner's 2007 H&H wages subject to employment taxes--namely, $30,445.[4] See Mayson Mfg. Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949).

We thus conclude that an additional $27,845 ($30,445 less reported wages of $2,600 equals $27,845) should be treated as wages petitioner received from H&H in 2007 and is subject to employment taxes.

---

[4]Using an annualized wage for 2002 of $27,606, petitioner received total wages from H&H during 2002 through 2006 of $152,225, which, divided by 5, equals $30,445. On brief respondent suggests that his revenue agent did an informal Internet search of compensation paid to managers of delivery and courier businesses. However, no documentary or other evidence of such an Internet search was offered into evidence. Respondent's revenue agent did not testify.

Disallowed Expenses

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred in carrying on a trade or business. However, a taxpayer is required to maintain adequate records, sec. 6001; sec. 1.6001-1(a), Income Tax Regs., and the Commissioner's determination in a notice of deficiency is presumed correct.

Further, taxpayers generally bear the burden of proof to substantiate claimed expenses. Rule 142(a), INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933). Because they provided insufficient documentation to respondent during the audit, petitioners do not qualify for a shift in the burden of proof under section 7491.

COGS--Disallowed $48,074 ($32,308 Contract Labor and $15,766 Fuel)

In their posttrial brief, for lack of substantiation petitioners state that they concede respondent's $48,074 reduction to H&H's COGS. H&H is allowed a total COGS deduction for 2007 of $302,330.

<u>Transportation Expenses--$25,579 ($3,800 Lease Payments; $11,641 Fuel Expenses; $4,967 Repairs; and $5,171 Other)</u>

Of the total $86,222 miscellaneous transportation expense deduction claimed on H&H's 2007 tax return, respondent disallowed $25,579, which included $3,800 lease payments, $11,641 fuel expenses, $4,967 repairs, and all $5,171 other expenses.

On brief petitioners state that they no longer dispute respondent's disallowance of the $3,800 relating to lease payments.

With regard to respondent's disallowance of $11,641 for fuel and $4,967 for repair expenses, petitioners on brief claim to have found (and made available to respondent) copies of receipts that would support an additional $3,400 in fuel expenses (over the $34,476 respondent allowed) and $7,103 in repair expenses (over the $5,077 respondent allowed).

For settlement purposes, the Court encouraged respondent to consider petitioners' alleged new receipts relating to fuel and repair expenses. The parties were not able to reach a settlement. The alleged new receipts are not in evidence and are not evidence we can consider at this time.

No evidence regarding the disallowed other expenses of $5,171 has been offered.

We sustain respondent's disallowance of the $25,579 in transportation expenses.

Rent Expenses--$27,282

At trial petitioners admitted that the $36,430 reported on H&H's 2007 Federal tax return for rent expenses was excessive. H&H's bank and QuickBook records substantiate payment of only $9,148 in rent expenses. Petitioners have not produced lease agreements or receipts to substantiate additional rent expenses.

We sustain respondent's disallowance of $27,282 in claimed rent expenses.

Section 6662 20% Penalty

Respondent's adjustments we sustain herein satisfy respondent's burden of production under section 7491(c).

Petitioner effectively acknowledges that H&H's inadequate and often inconsistent records support imposition of the section 6662 penalty.

We sustain respondent's imposition of the section 6662 penalty.

Decision will be entered

under Rule 155.
